**Ida Lynn KENNEDY, Respondent,**

v.

**Billy Ray KENNEDY, Appellant.**

**No. WD 54433.**

Missouri Court of Appeals, Western District.

June 9, 1998.

Robert A. Kelly, Columbia, for appellant.

Joseph D. Holt, Fulton, for respondent.

Before ELLIS, P.J., and LOWENSTEIN and RIEDERER, JJ.

RIEDERER, Judge.

Appellant Billy Ray Kennedy (Husband) and Respondent Ida Lynn Kennedy (Wife) were married in 1994. The couple had one child, Calder Joseph Kennedy (C.J.), born September 29, 1994. The couple separated on February 13, 1996. On February 14, 1996, Wife filed an *ex parte* adult abuse petition requesting an order compelling Husband out of the marital home, an order of protection from Husband, and an immediate grant of custody of the child. The *ex parte* petition was granted. On February 15, 1996, Wife filed for divorce.

In her "Petition for Dissolution of Marriage," Wife prayed for primary physical custody of C.J. Alleging that "[t]he best interests of the minor child will be served if Petitioner is awarded primary physical custody with supervised and restricted visitation to Respondent." In her request for relief, Wife reiterated her plea that any visitation awarded to father be "restricted and supervised."

On March 27, 1996, Husband filed an answer denying that restricted and supervised visitation was necessary; a counter-petition for dissolution wherein he requested an award of custody "subject to the reasonable visitation rights of petitioner;" and a "Motion and Affidavit for Temporary Custody, Support, and for an Order Enjoining Petitioner from Encumbering, Transferring, or Otherwise Disposing of Marital Property Pendente Lite." In his motion for temporary custody, Husband alleged that, "[s]ince the separation of the parties, petitioner has failed and refused to allow Respondent any meaningful contact with the minor child, and has interfered with his relationship with the minor child by obtaining an order of protection, which has since been denied." Husband's motion for temporary custody was never called up for hearing, nor was it ever ruled upon.

On February 27, 1997, the cause proceeded to trial in the Circuit Court of Callaway County, the Honorable Ellen S. Roper presiding. At trial, Wife testified that she resided in an apartment in Fulton, Missouri with C.J. and two children from a previous mar-

riage. Wife testified that C.J. visited Husband overnight three nights per week.

Counsel for both parties presented several witnesses. At the close of all the evidence, the court took the case under advisement. On April 29, 1997, Judge Roper entered a judgment awarding sole legal and physical custody of C.J. to Wife, subject to Husband's "reasonable rights of visitation," which were specifically enumerated in the docket entry. The judgment also divided each item of unencumbered real and personal marital property, including tangible and intangible items.

Husband appealed the order. On appeal, Husband contends: (1) that the trial court plainly erred in failing, *sua sponte,* to appoint a guardian *ad litem* as mandated by Section 452.423.1, RSMo 1994; and (2) that the trial court abused its discretion by awarding custody of the minor child to Wife.

### Standard of Review

■ In a court-tried case, we will affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Hankins v. Hankins,* 920 S.W.2d 182, 185–86 (Mo.App.1996) (*citing Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976)).

### Point I

In his first point on appeal, Appellant contends that the trial court plainly erred in failing, *sua sponte,* to appoint a guardian *ad litem* as mandated by Section 452.423.1, RSMo 1996. Section 452.423.1, RSMo 1996 provides:

In all proceedings for child custody or for dissolution of marriage or legal separation where custody, visitation, or support of a child is a contested issue, the court *may* appoint a guardian *ad litem.* The court *shall* appoint a guardian *ad litem* in any proceeding in which child abuse or neglect is alleged.

■ Whenever abuse or neglect of a child is alleged in pleadings or motions, the appointment of a guardian *ad litem* is mandatory under the statute. *Frazier v. Frazier,* 845 S.W.2d 130, 131 (Mo.App.1993). The manda-

tory appointment of a guardian *ad litem* pursuant to Section 452.423.1 is triggered by an allegation of child abuse or neglect expressly stated in a pleading. *Rombach v. Rombach,* 867 S.W.2d 500, 503 (Mo. banc 1993). In the instant case, there was no allegation of child abuse or neglect in any pleading. Appellant argues that Wife's pleadings necessarily implied abuse or neglect by requesting that Husband's visitation be supervised or restricted.

■ Wife sought custody of the child and requested that the visitation rights of her husband be "supervised or restricted." Under Section 452.400, RSMo 1996, a court will grant reasonable unrestricted and unsupervised visitation rights to a noncustodial parent, "unless the court finds, after a hearing, that visitation would endanger the child's physical health or impair his emotional development." § 452.400.1. Appellant argues that Wife's request for supervised and restricted visitation is an allegation that visitation with Appellant "would endanger the child's physical health or impair his emotional development," and this, therefore, amounts to an allegation of neglect or child abuse requiring the appointment of a guardian *ad litem.* We pass over in silence the anomaly that Appellant's claim, if successful, would invite the trial court to rule against him. Wife made no claim of neglect or abuse in the pleadings. At trial, Wife testified that she had four "altercations" with Husband in the course of their year-long separation. First, in June 1996, Husband cursed at Wife in presence of son, then held son away from Wife while son reached for Wife; Husband finally handed son back to Wife. Second, in August or September 1996, Husband arrived at Wife's apartment to pick up son; the couple argued until Husband handed son back to Wife and left, saying that since she wanted everything else, she might as well have son, too. Third, in December 1996, Husband called Wife then showed up at her doorstep, wanting to talk; Wife called the police, and Husband waited for them to arrive. Fourth, Husband threatened Wife over the phone, saying, "You have no idea, Lynn, what's coming." Apparently, these incidents with Husband spurred Wife to seek restricted and supervised visitation.

Wife also testified that, during the separation, Husband had custody four days and three nights a week, and that C.J. was always happy to see his father and the two had a very good relationship.

In neither pleadings nor motions did Wife make an allegation of child abuse or neglect. Even at trial Wife did not make such an allegation. The law is clear that a guardian *ad litem* is mandated only when an actual allegation of neglect or abuse is made. No such allegation was made in this case. This court does not find any statement in the record that approaches such an allegation.

Appellant's argument that Wife's request for "supervised and restricted" visitation amounts to allegations of child abuse or neglect is without merit. Appellant cites no cases that have interpreted such a request as abuse or neglect, and this court finds none. A custodial parent might seek supervised and restricted visitation for the noncustodial parent for many different reasons. To accept Appellant's argument would be to give Section 452.400 unintended meaning. For the mandatory provision of Section 452.423.1 to be triggered, an actual allegation of abuse or neglect must be stated in the pleadings or motions. *Rombach*, 867 S.W.2d at 503.

Point denied.

### Point II

In his second point on appeal, Appellant contends that the trial court abused its discretion by awarding custody of the minor child to Wife. Appellant argues that: (1) there was no substantial evidence to support the award of primary physical custody to Wife; (2) the award of custody was against the weight of the evidence; and (3) the award was an erroneous application of law.

### Standard of Review

■ In a court-tried case, we will affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Hankins v. Hankins*, 920 S.W.2d 182, 185–86 (Mo.App.1996). The trial court's finding regarding child custody shall stand unless the

reviewing court is convinced the welfare of the child requires a different disposition. *Osmun v. Osmun*, 842 S.W.2d 932, 936 (Mo. App.1992). This court should set aside a judgment on the ground that it is against the weight of the evidence only with caution and with a firm belief that the decree of judgment is wrong. *Hankins*, 920 S.W.2d at 186.

■ Each case involving child custody must turn on the particular facts of that case, rather than upon application of a set formula or strict academic rules. *Replogle v. Replogle*, 903 S.W.2d 551, 554 (Mo.App.1995). The ultimate concern guiding a court's determination of the proper custody arrangement is the best interest of the child. *Wilkinson v. DeClue*, 890 S.W.2d 774, 776 (Mo.App.1995). A court makes a determination of a child's best interest by looking at all relevant factors, including the eight enumerated factors in Section 452.375, RSMo 1996.

Section 452.375 provides, in pertinent part:

2. The court shall determine custody in accordance with the best interests of the child. The court shall consider all relevant factors including:

(1) The wishes of the child's parents as to his custody;

(2) The wishes of a child as to his custody;

(3) The interaction and interrelationship of the child with his parents, his siblings, and any other person who may significantly affect the child's best interests;

(4) The child's adjustment to his home, school, and community;

(5) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved....;

(6) The needs of the child for a continuing relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

(7) The intention of either parent to relocate his residence outside the state; and

(8) Which parent is more likely to allow the child frequent and meaningful contact with the other parent.

As to the first factor of Section 452.375.2(1), the "wishes of the child's parents as to his custody," Wife wanted primary legal and physical custody with restricted and supervised visitation by Husband. Husband wanted joint legal custody with primary physical custody granted to him.

The second factor, Section 452.375.2(2), the "wishes of a child as to his custody," is inconclusive, as the child is too young to express a preference.

The third factor, Section 452.375.2(3), is the "interaction and interrelationship of the child with his parents, his siblings, and any other person who may significantly affect the child's best interests." The record reveals that the child has a good relationship with both his father and mother. Wife has custody of the child's two half-siblings, so custody with her would allow the continuation of those relationships.

Appellant asserts that there is "uncontroverted evidence that the minor child has an unhealthy and physically unsafe relationship" with a 12–year–old half-sibling. Mother testified on cross-examination that the 12–year–old did not know the proper way to hold a baby and that he might accidentally harm him when picking him up. The half-sibling's father and Husband also testified about their concerns about the 12–year–old and the baby. Such concerns do not constitute "uncontroverted" evidence of a "physically unsafe" relationship, as Appellant contends. Wife even testified that "C.J. loves his brother and sister dearly." The continuation of the relationship with the half-siblings is in the best interest of the child; and this factor does not convince this reviewing court that the welfare of the child requires a different disposition.

The fourth factor, Section 452.375.2(4), is the child's adjustment to his home, school, and community. The minor child is too young to attend school and will remain in the same community whether with Husband or Wife. The marital home, a rural Callaway County farmhouse, was facing foreclosure.

Wife had relocated with C.J. and his two half-siblings to an apartment in Fulton. Husband's parents purchased a house for him in Fulton.

The fifth factor, Section 452.375.2(5), is the mental and physical health of all individuals involved, including any history of abuse of any individuals involved. Wife has been hospitalized and treated for stress and depression. She claimed a debt of almost $24,000 to her psychiatrist.

The sixth factor, Section 452.375.2(6), is the needs of the child for a continuing relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child. If custody is with either parent, the child will have the opportunity to continue the relationship with the other parent. The evidence establishes that both parents are able and willing to accommodate the needs of the child.

The seventh factor, Section 452.375.2(7), is irrelevant as neither parent intends to relocate his or her residence outside the state.

The eighth factor, Section 452.375.2(8), is which parent is more likely to allow the child frequent and meaningful contact with the other parent. At the time of separation, Wife sought an order of protection from Husband, and an order banning Husband from the marital home. At the time the Dissolution Petition was filed, Wife asked that Husband's visitation be restricted and supervised.

During the period of the separation, Wife had custody, but the two parties split time with the child. The record establishes that both parties acted improperly during the course of the separation, and neither party is blameless. Husband confronted Wife a number of times, and Wife withheld visitation from Husband on an occasion. Husband also refused visitation with his son on an occasion.

After consideration of all of the relevant factors, including the eight factors set out in Section 452.375.2 this court is not convinced that the welfare of the child requires a different disposition. *Osmun,* 842 S.W.2d at 936. Nor does this court have a firm belief that

the decree of judgment is wrong. *Hankins*, 920 S.W.2d at 186.

Point II is denied.

The judgment of the trial court is affirmed.

ELLIS, P.J., and LOWENSTEIN, J., concur.