**Michael Aaron TOMPKINS and Jeremy Michael Tompkins, Appellants,**

v.

**Cynthia Gayle BAKER, Respondent.**

**No. WD 56266.**

Missouri Court of Appeals,
Western District.

June 30, 1999.

Rehearing Denied Aug. 31, 1999.

Bruce Rene Anderson, Kansas City, for appellant.

Teresa Marie Terry, Liberty, for respondent.

Before HOWARD, P.J., ULRICH and SMART, JJ.

SMART, Judge.

Michael Tompkins ("Father") appeals an order awarding joint legal custody and primary physical custody of Jeremy Tompkins to Cynthia Baker ("Mother"). Father claims that the custody award, which was submitted to the court by joint stipulation of the parties, is not in the best interests of Jeremy, and that Father was not bound by the stipulation he made in court. Father also appeals a modification of the amount of child support he was ordered to pay Mother.

## Factual Background

Mother and Father were never married, but it is not disputed that Father is the natural father of Jeremy ("Child") who was born January 29, 1990. Pursuant to an administrative order entered by the Division of Child Support Enforcement on June 2, 1995, Father's paternity was established. The Division ordered Father to pay Mother $138.00 per month in child support. Custody and visitation were not addressed, other than that Mother was recognized as having actual custody of the child.

Approximately two years later, on April 10, 1997, Father filed a petition under the Uniform Parentage Act, §§ 210.817 RSMo. 1994 *et seq.* In addition to seeking a declaration that he is Child's father,[1] Father requested awards of joint legal and primary physical custody, subject to Mother's reasonable and specific rights of visitation. Father alleged that he had been a "joint custodian" of Child since Child's birth, that he was a "fit, proper and suitable party to be awarded joint legal custody," and that Child's best interests would be served if Father were awarded primary physical custody. Father also sought a ruling requiring Mother to contribute financially to Child's support.

In her answer filed May 23, 1997, Mother, of course, admitted that Father was Child's biological father. Mother denied that Father had been "joint custodian" of Child since Child's birth. Further, Mother denied that it would be in Child's best interests for Father to be awarded either joint legal or primary physical custody. Mother also denied that she had sufficient funds from which to contribute to Child's support. Mother filed a counter motion to modify child support and visitation, asking the court to increase Father's child support obligation and establish a specific schedule of visitation between Father and Child.

Mother and Father, along with their respective counsel, appeared in court on April 29, 1998. Father's counsel, Mr. Allen DeCamp, informed the court that the parties had agreed to certain stipulations. After a short recess, Mr. DeCamp announced that the parties had reached an agreement and proceeded to recite the parties' agreement into the record. Mr. DeCamp recited an agreement in which the parties stipulated that Father was the biological father of Child and agreed that Mother and Father would have joint legal custody of Child, but that Mother would be Child's primary physical custodian, subject to Father's reasonable visitation. A plan for visitation was set out in extensive detail. During Mr. DeCamp's recitation, Father sat by his side without comment.

After Mr. DeCamp recited the parties' agreement into the record, the court looked at each party and asked if the recitation was the stipulation of each. Both Ms. Teresa Terry, Mother's counsel, and Mr. DeCamp indicated that the recitation represented the "full agreement" of the parties. The court responded, "So ordered, all as per formal order filed," but clarified that statement, noting that the correct amount of child support still need-

1. Although Father's paternity had already been established in the administrative proceeding pursuant to § 454.485, RSMo 1994, Father apparently chose to present his custo-dy and visitation issues under The Uniform Parentage Act because § 210.829 allows joinder of custody and visitation issues with an action to establish paternity.

ed to be determined. Mr. DeCamp told the court that the parties would try to reach an agreement on the issue of child support, but if they were unable to do so, each party would submit a Form 14, and would agree to abide by the court's decision. Counsel agreed that they would send drafts of a judgment order back and forth until they both agreed on a final order.

After the hearing, Father told his attorney that he had not agreed with the stipulations, as recited to the court, and asked Mr. DeCamp to intervene and address the misunderstanding. On May 4, 1998, approximately six days after the hearing, Mr. DeCamp contacted Ms. Terry, Mother's attorney, and told her that Father wanted to back out of the agreement that had been put on the record and that it was not necessary for her to prepare the judgment order for the court. Ms. Terry responded that she did not believe that Father could back out of the agreement because the court had pronounced "so ordered" at the hearing. On May 5, 1998, Ms. Terry submitted a proposed judgment order along with a completed Form 14 and a letter explaining how the Form 14 calculations were reached. On May 6, 1998, Mr. DeCamp sent a letter notifying the court that "[his] client no longer desire[d] to settle th[e] case but, instead, want[ed] a full evidentiary hearing on all issues." Father never filed a completed Form 14. On May 12, 1998, the court signed and filed Mother's proposed judgment order.

On May 19, 1998, Father filed a motion requesting the court stay and reconsider its order pursuant to Rule 74.06(b)(5). In his motion, Father asked the court to stay its order concerning "child support amount, retroactivity of child support and attorneys fees because it is not equitable that the Judgement Order remain in force." Father's motion was mailed to Ms. Terry on May 16, 1998. A hearing on the matter was noticed up for June 3, 1998; however, it was continued to June 10, 1998.

Mr. DeCamp moved to withdraw as Father's counsel on June 1, 1998, and Mr. Thomas Munro entered his appearance on June 2, 1998. On June 4, 1998, Mr. Munro filed a second motion for relief from the judgment, claiming that it was not in Child's best interests for Mother to be named primary physical custodian. The certificate of service indicated that a copy had been mailed and faxed to Ms. Terry on June 4, 1998. Ms. Terry, however, received only a notice that a hearing was noticed up on June 10, 1998. On June 10, 1998, a copy of the motion was hand-delivered to Ms. Terry.

On June 10, 1998 the court was unable to reach the matter, and it was continued. The attorneys were instructed to re-notice the hearing for another date. On August 5, 1998, the matter was noticed up for a hearing on August 12, 1998. A record of the August 12, 1998 hearing was not made. The court's docket sheet indicates that the matter was "passed." On August 21, 1998, Father filed his notice of appeal in this court.

## Jurisdiction

■ Mother argues initially that because Father did not personally serve her with his motions for relief, that the trial court did not have jurisdiction to consider those post-trial motions.

Rule 74.06(b) provides, in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party ... from a final judgment [where] ... the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment remain in force.

Rule 74.06(b)(5). The rule also states that "[t]he motion and a notice of a time and place for hearing on the motion shall be served upon the parties to the judgment pursuant to Rule 54." Rule 74.06(c). Rule

54.13 provides that personal service upon an individual shall be made

> [u]pon an individual ... by delivering a copy of the summons and petition personally to the individual or by leaving a copy of the summons and petition at the individual's dwelling house or usual place of abode with some person of the individual's family over the age of fifteen years, or by delivering a copy of the summons and petition to an agent authorized by appointment or *required by law* to receive service of process.

Rule 54.13(b)(1) (emphasis added). Rule 43.01 mandates that "[w]henever under these rules ... service is required or permitted to be made upon a party represented by an attorney of record, the service *shall* be made upon the attorney unless service upon the party is ordered by the Court." Rule 43.01(b) (emphasis added).

Because Mother's attorney was served with a copy of Father's motion on June 10, 1998, proper personal service was effected pursuant to Rules 43.01(b), 54.13(b)(1) and 74.06(c). Moreover, in view of the fact that, pursuant to Rule 81.05, the judgment was not yet final at the time the motion was filed, it would seem to us that service of any motion on Mother's attorney at that time would have been adequate service.[2] The trial court had jurisdiction to consider the motion.

### Timely Appeal

■ A judgment becomes final thirty days after it is entered if a timely motion for new trial is not filed. Rule 81.05(a). If a motion for new trial is timely filed, then the trial court's judgment becomes final at the expiration of ninety days from the filing of such motion; or, if the motion is ruled on earlier, then the judgment becomes final on the date of the motion's disposition, or thirty days from the date the judgment was entered, whichever is later. *Id.* "Authorized after-trial motions shall be treated as, and as a part of, a new trial motion for the purpose of ascertaining the time within which an appeal must be taken...." *Id.* Rule 74.06(b) motions have specifically been classified as "authorized after-trial motions" for the purposes of Rule 81.05(a). *See Taylor v. United Parcel Serv., Inc.*, 854 S.W.2d 390, 392 n. 1 (Mo. banc 1993); *McGee v. Allen*, 929 S.W.2d 278, 280 (Mo.App.1996).

The trial court's original order was entered on May 12, 1998. Father's filed a Rule 74.06(b) motion on May 19, 1998, well within the thirty day period specified in Rule 81.05. Because Father's motion was an authorized after-trial motion, the trial court's jurisdiction over the case was extended ninety days, to August 12, 1998, pursuant to Rule 81.05(a). The parties appeared before the court on August 12, 1998, and the matter was "passed." The judgment therefore became final August 12, 1998, pursuant to Rule 81.05(a). Once a judgment becomes final, the appellant has ten days to file a notice of appeal in this court. Rule 81.04(a). Father's notice of appeal was filed in this court on August 21, 1998, and therefore, was timely filed.

### Review of Father's Claims

■ Father claims on appeal that the trial court erred in awarding primary residential custody of Child to Mother because (1) the award was not supported by substantial evidence in that the parties did not introduce any evidence to support a custody determination, and (2) Father is not bound by the agreement outlined by counsel on the record. Our review of the trial court's child custody order is governed by *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Accordingly, we will affirm

---

**2.** Ordinarily, one would expect that a motion under Rule 75.01 would be filed during the thirty day period the trial court retains control of its judgment. A motion under Rule 74.06(b) would generally be filed *after* a judgment has become final, although we are aware of nothing which forbids its filing before the judgment is final. *Taylor v. United Parcel Serv., Inc.*, 854 S.W.2d 390, 392 n. 1 (Mo. banc 1993) (motion under 74.06(b) an "authorized after-trial motion").

the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.*

### Original Custody Determination

■ We initially note that, although the Father sought, *inter alia,* a declaration of paternity in this proceeding, the issue of paternity had already been resolved in the administrative proceeding and was *res judicata.* We also note that Father's action was an original proceeding as to custody and visitation, and was therefore governed by § 452.375 RSMo 1994,[3] in that the issues of custody and visitation were not joined and decided in the previous proceeding. *See* § 210.829 RSMo 1994, allowing joinder of custody, visitation and other issues with an action brought under the Uniform Parentage Act.

### Child Custody Stipulation

■ We review the issue of whether Father was bound by the stipulation as a matter of law. In the stipulation, it was explicitly agreed that "residential custody" would remain with Ms. Baker. The stipulation also covered many specific aspects of visitation. At the end of the recitation of the stipulation, Ms. Terry stated, "That now concludes the full agreement. We agree." The court asked, "That is the stipulation between the parties?" To which Mr. DeCamp replied, "Yes, Your Honor." The court then stated, "So ordered, all as per formal order filed."

Although Father and Mother were never married, the agreement recited to the trial court may be regarded as the functional equivalent of a separation agreement. Pursuant to § 452.325, the parties to a dissolution action may enter a written separation agreement which provides for maintenance for either of them, property distribution, and the custody, support and visitation of their children. § 452.325.1, RSMo 1994. Generally, the terms of a separation agreement are binding upon the court except to the extent that they address the custody, support or visitation of a child. § 452.325.2, RSMo 1994.

Although the parties to a dissolution proceeding are authorized … to enter into a written agreement containing provisions for the maintenance of either or them, the disposition of any property owned by either of them and the custody, support, and visitation of their children, the agreement, with respect to the custody, support, and visitation of minor children is not binding on the trial court, nor can the parties preclude or limit the court with respect to the modification of the support, custody, or visitation provisions of the decree. As a result, orders pertaining to the custody of minor children become the special obligation of the judge who must act upon evidence adduced in the case.

*Williams v. Cole,* 590 S.W.2d 908, 911 (Mo. banc 1979); *see also Johns v. McNabb,* 247 S.W.2d 640, 643 (Mo.1952).

Father argues that he is not bound by the stipulation. Although § 452.325.1 requires a separation agreement to be in writing, courts have repeatedly found that oral stipulations entered into in open court and spread upon the record, by parties represented by able counsel, are just as binding. *See e.g., Carter v. Carter,* 869 S.W.2d 822, 828 (Mo.App.1994); *Peirick v. Peirick,* 641 S.W.2d 195, 196 (Mo.App. 1982); *Markwardt v. Markwardt,* 617 S.W.2d 461, 462 (Mo.App.1981).

■ Courts may, and often do, act upon statements made by counsel and upon stipulations of the parties. *Hansen v. Ryan,* 186 S.W.2d 595, 600 (Mo.1945).

In the administration of justice and the prompt dispatch of business, courts must and do act upon the statements of

---

**3.** All statutory references are to the Revised Statutes of Missouri, 1994, unless otherwise indicated.

counsel and upon the stipulations of parties to pending causes. Where the parties have voluntarily entered into a stipulation, which appears fair and reasonable for the compromise and settlement of the issues of a pending cause, and where the stipulation is spread upon the record with the consent and approval of the court, as here, the parties are bound thereby and the court may, thereafter, properly proceed to dispose of the case upon the basis of the pleadings, the stipulation and admitted facts.

*Id.*

Father claims that he "did not fully comprehend or appreciate the terms of the purported agreement and certainly never agreed that [Mother] could be designated as custodial parent." Father and Mother, as well as their respective counsel, were present at the April 29, 1998, hearing. In his recitation of the parties' agreement, Mr. DeCamp clearly stated that, "residential custody will remain with ... Cynthia Baker.... Mr. Tompkins will have reasonable visitation." Ms. Terry reiterated the parties' agreement when she asked Mr. DeCamp, "[D]id you mention that it is to be joint legal custody, with primary residential custody?" It was clear from both attorneys' statements to the court that the parties would have joint legal custody and Mother would have primary physical custody of Child, subject to Father's right of reasonable visitation.

 Father claims that the trial court did not assure itself that the parties understood or assented to the agreement. While it might have been ideal for the trial court to directly ask the parties if the stipulation that had just been read into the record accurately reflected their agreement, the trial court could also have assumed that the parties' attorneys had authority to act on their clients' behalves. When a client employs an attorney to represent the interest of the client in a dispute, the attorney is expressly authorized to appear in the case, and implicitly autho-

rized to "bind the client in matters of procedure, including any stipulation for the control of the progress of the action." *Rosenblum v. Jacks or Better of Am. W., Inc.*, 745 S.W.2d 754, 760 (Mo.App.1988). An attorney's authority to act on behalf of a client can also be derived from apparent authority. *Id.* Apparent authority is created by the client's actions, which would cause a third party to reasonably believe that the attorney has the authority to act on the client's behalf. *Barton v. Snellson*, 735 S.W.2d 160, 162 (Mo.App.1987).

Father did not object to the stipulation as read into the record by his attorney at any point during the hearing. When Mr. DeCamp agreed that what he had read into the record was the agreement of the parties, Father did not object. Any objections Father might have had to the custody agreement were thereby waived. Father cannot remain silent while the stipulation is read into the record, and while his attorney agrees that the agreement accurately reflects Father's and Mother's agreement, and then later complain that he did not agree to the terms of the agreement. While the stipulation was not binding on the court, as discussed below, the trial court did not misapply the law in considering the stipulation to be binding on Father.

### Child Custody

 Having determined that the stipulation was binding on Father, we have nevertheless not reached the end of our inquiry. The trial court has a responsibility to enter a custody order which reflects the best interests of the child. § 452.375.2, RSMo 1994. The court's duty in this regard is not altered by the fact that Mother and Father were never married. *Harris by Harris v. Harris*, 803 S.W.2d 167, 169 (Mo.App.1991). This duty is absolute, and it cannot be "abdicated, relinquished or diminished" because the parents have entered an agreement. *Turpin v. Turpin*, 570 S.W.2d 831, 834 (Mo.App.1978). The fact that parents do not dispute custody

provisions does not relieve the trial court of its responsibility to consider the best interests of the child. *Vangundy v. Vangundy,* 937 S.W.2d 228, 232 (Mo.App.1996).

■■■■ A custody order must reflect that the arrangement was determined to be in the child's best interests, even when the parents stipulate to the outcome. *See Distler v. Distler,* 877 S.W.2d 184, 185–86 (Mo.App.1994). The fact that the parents stipulated to child custody is one factor the trial court considers when determining the best interests of the child. § 452.375.2(1), RSMo 1994. Others include such items as the child's wishes, the child's interaction with his parents, the mental and physical condition of both the parents and the child, and which parent is more likely to allow the child to have frequent and meaningful contact with the other parent. *See* § 452.375.2, RSMo 1994. Evidence should be presented to determine the propriety of the parents' stipulation and whether or not the custody arrangement in the stipulation serves the child's best interest and future welfare. *Wood v. Wood,* 400 S.W.2d 431, 437 (Mo.App.1966). A trial judge's responsibility for determining what is in the best interests of the child mandates that the judge act upon the evidence presented. *Riley v. Riley,* 643 S.W.2d 298, 300 (Mo.App.1982).

In the present case, the trial court's order states:

> 12. That it is in the best interest of the minor child that the parties be granted the joint legal custody of Jeremy Michael Tompkins with the Defendant, Cynthia Gayle Baker, retaining primary residential custody and a specific schedule of visitation set forth for the Plaintiff, Michael Aaron Tompkins, pursuant

to the stipulation entered on the record by the parties on April 29, 1998.

Although the trial court states that its order is in the best interest of Child, there is no evidence, other than the parties' stipulation, supporting this conclusion. The record lacks *any* evidence except the parties' stipulation, which is only one factor that the trial court must consider when determining what is in the child's best interest. Therefore, the trial court's decision is not supported by substantial evidence. The trial court's custody order is vacated and the case is remanded for further proceedings.[4]

### Child Support

■■■■ In his second point on appeal, Father argues that the trial court erred in modifying his child support obligation because the modification was not supported by substantial evidence. Father argues that Mother failed to introduce any substantial evidence from which the court could find that, because of a substantial and continuing change of circumstances, that the prior award of child support was unreasonable.

■■■■ Form 14 must be used in any proceeding involving the determination of child support. *Neal v. Neal,* 941 S.W.2d 501, 504 (Mo. banc 1997). Mother filed her Form 14 with the court on May 12, 1998. Father never filed his own Form 14 with the court. One party's failure to file a Form 14 effactually acknowledges agreement with the Form 14 provided by the other party. *Allen v. Allen,* 961 S.W.2d 891, 893 (Mo.App.1998). In order to complain to this court about the trial court's award of child support, Father is required to have submitted a Form 14 to the trial court. *Yun v. Yun,* 908 S.W.2d 787, 791

---

4. In view of the fact that there is a stipulation, the trial court need elicit only sufficient evidence to be reasonably and conscientiously satisfied that the stipulation as to custody is in Child's best interest, taking into account pertinent factors including those mentioned in § 452.375 (because this was the original custody proceeding). Because the parties have stipulated, the trial court will control the presentation of evidence on remand as to the custody and visitation issues.

(Mo.App.1995). His failure to do so has waived appellate review of that issue.[5] *Id.* Point II is denied. Nevertheless, because the child custody order is vacated, we also vacate the support order pending resolution of the custody order.

### Conclusion

The trial court's order of joint legal custody to Mother and Father and primary physical custody of Child to Mother is vacated, and the case is remanded for further evidence regarding whether such an award is in Child's best interest. The child support order is also vacated in view of the fact that the custody order is vacated. The stipulation entered into between the parties is binding on the parties, subject to the court's determination that it is in Child's best interest. After considering further evidence related to the Child's best interest, the trial court shall determine whether the stipulation entered into by the parties serves Child's best interest, and shall either enforce the stipulation, or set it aside; and the court shall conduct such additional proceedings, including entering an order of child support, as it deems necessary.

HOWARD, P.J. and ULRICH, J. concur.

---

**5.** We note that the trial court gave the parties until May 15, 1998, to file their Form 14's, yet entered its order on May 12, 1998. Father has failed to complain of the premature nature of the trial court's order, and there is no indication Father intended to file a Form 14. Accordingly, we need not address that issue in this opinion.