Jacqueline M. HERNANDEZ,
Respondent–Appellant,

v.

Robert A. HERNANDEZ, Appellant–
Respondent.

Nos. WD 67846, WD 67889.

Missouri Court of Appeals,
Western District.

April 15, 2008.

Lloyd Koelker, Kansas City, MO, for Appellant-Respondent.

Cynthia K. Wallace, Kansas City, MO, for Respondent-Appellant.

Before VICTOR C. HOWARD, C.J., LISA WHITE HARDWICK, and JAMES EDWARD WELSH, JJ.

JAMES EDWARD WELSH, Judge.

Robert Hernandez (Husband) appeals the circuit court's Judgment for Dissolution of Marriage. Jacqueline Hernandez (Wife) cross-appeals. We affirm.

Husband and Wife were married on October 7, 1994. Two children were born during the marriage in 1998 and 2000. The parties separated in May of 2005, and Wife filed an action to dissolve the marriage. Husband initially denied the marriage was broken and sought a legal separation but, eventually, joined in Wife's request to dissolve the marriage. When the trial commenced, all issues in-

cluding property division, child custody, and child support were presented to the circuit court. However, after three days of trial, the parties announced that issues pertaining to the children's custody had been resolved. The circuit court heard evidence on the agreed parenting plan, approved the plan as in the best interest of the children, and discharged the guardian ad litem. An interlocutory order was entered adopting the joint parenting plan submitted by the parties and ordering them to abide by it.

The trial proceeded on the remaining issues. Husband asked the circuit court to find that certain apartment buildings were his non-marital property subject to a marital interest in Wife. Wife contended the apartment buildings were marital property. At the time the apartment buildings were purchased, the parties were residing together but not married. The apartment buildings were acquired in Husband's name alone. Husband testified he purchased the buildings using funds from a savings account that was in his name alone. Wife testified that the funds used to procure the buildings were a combination of both joint funds and separate funds of Husband. There is no dispute that the mortgage on the buildings was reduced by payments made during the marriage from marital funds.

Approximately four years after the marriage, in 1998, the parties formed R & J Rentals, LLC, a limited liability corporation. R & J Rentals is a party to these proceedings. Husband transferred title to the apartment buildings to R & J Rentals at the inception of the limited liability corporation. The corporation owned no other assets. The "R" and the "J" in the title of the limited liability corporation represented the initials of the first names of the parties. Husband and Wife were each listed as a "manager" of the corporation, and each was designated to receive fifty percent of the income from the corporation. The parties' tax returns reflected each party receiving fifty percent of the corporation's income. At or near the time of the formation of the corporation, Husband added Wife's name to the deed of another piece of residential property, which he had owned prior to the marriage. That property was identified as the house on Roger's Lane.

The circuit court determined that the apartment buildings titled in the limited liability corporation were marital property. Husband appeals.

During the trial (after the circuit court's interlocutory order approving the joint parenting plan but before the conclusion of the evidence on the property issues), Wife moved the circuit court to reopen the evidence concerning the children's issues. Wife alleged that Husband threatened her over the telephone that he would not permit her to see another man and alleged confrontations with Husband and his family at visitation exchanges. The circuit court denied the motion to reopen the evidence but ended up hearing evidence concerning these allegations anyway as it reflected on the alleged marital misconduct of Husband. The court found there was nothing contained in the motion, even assuming the allegations were true, that would lead it to change the parenting plan. Wife appeals. Wife also appeals the circuit court's disposition of an anticipated capital gains tax liability and the circuit court's division of the children's unreimbursed medical expenses.

■■■ Husband raises a single issue on appeal. Husband contends the circuit court erred when it found the apartment buildings were marital property. Our standard of review is well settled. The circuit court's judgment in a dissolution proceeding will be affirmed on appeal un-

less there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Childers v. Childers*, 26 S.W.3d 851, 853 (Mo.App. 2000). A judgment will not be reversed unless it is against the weight of the evidence and then only with caution and a firm belief that the judgment is wrong. *Kennedy v. Kennedy*, 969 S.W.2d 310, 313 (Mo.App.1998). The "weight of the evidence" refers to the probative value of the evidence and not the quantity of the evidence. *In re Marriage of Lewis*, 808 S.W.2d 919, 922 (Mo.App.1991). The evidence in the record is reviewed in the light most favorable to the circuit court's decision, and all evidence contrary to the judgment is disregarded. *Evans v. Evans*, 45 S.W.3d 523, 526 (Mo.App.2001). "The burden of demonstrating error is on the party challenging the divorce decree." *Childers*, 26 S.W.3d at 853.

The circuit court has broad discretion in distributing property, and an appellate court will interfere with the circuit court's judgment only if the division is so unduly weighted in favor of one party as to constitute an abuse of discretion. *Miles v. Werle*, 977 S.W.2d 297, 301 (Mo. App.1998). The circuit court's decision regarding property division will not be reversed absent an abuse of discretion. *Cohen v. Cohen*, 73 S.W.3d 39, 53 (Mo.App. 2002). "An abuse of discretion occurs when a circuit court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to indicate indifference and a lack of careful judicial consideration." *Id.* If reasonable persons can differ about the propriety of the circuit court's action, it cannot be said that the circuit court abused its discretion. *In re*

*Marriage of Medlock*, 990 S.W.2d 186, 189 (Mo.App.1999).

" 'A trial court possesses broad discretion in identifying marital property.' " *Beckham v. Beckham*, 41 S.W.3d 908, 911 (Mo.App.2001) (citation omitted). "When characterizations of property as marital or separate rest on an assessment of witness credibility, this court defers to the trial court's determination of that credibility." *Id.* at 911–12.

It is undisputed that the apartment buildings were acquired by Husband prior to the marriage and acquired in his name alone. It is also undisputed that during the marriage all right, title, and interest in the apartment buildings were transferred to R & J Rentals, LLC. The circuit court found as follows:

R & J Rentals, LLC was joined as a party by agreement of Petitioner and Respondent on July 28, 2006. The Court finds that all of the value of the LLC is marital property, and all of the credible evidence leads the Court to believe that it was the intention of Respondent to transmute the real estate he originally owed, prior to the marriage, into marital property, first by titling the real property jointly and then by placing the real property into an LLC were [sic] both parties were equal members. It is not just the titling that convinces that Court that the LLC assets are marital. The parties conducted themselves during the marriage in all respects as if the real property owned by the LLC were a marital asset. Other factors considered by the Court in determining that the LLC is marital property are: (a) All credible evidence is that the parties treated their rental business as a joint marital enterprise. Statements to the contrary by Respondent are not credible. (b) Over $75,000 of marital money went to interest and to reduction of prin-

ciple [sic]. (c) The parties treated the real estate for all tax purposes without fail, as if it were a jointly owned marital asset.

Viewing the evidence in the light most favorable to the circuit court's findings, we find the circuit court's findings amply supported by the record with a single exception. The record is devoid of evidence of a title transfer from Husband to Husband and Wife prior to the transfer of the apartment buildings to R & J Rentals, LLC. However, this in no way affects the circuit court's ultimate classification of the apartment buildings as marital property. As the circuit court's findings make clear, the court did not solely rely on that interim transaction in its determination that the apartment buildings were marital property. The circuit court's findings make clear that the creation of the LLC, with Husband and Wife as the sole members, and joint managers, sharing equally in the income of the enterprise, was determinative in its decision to find the apartment buildings had been transmuted from Husband's non-marital property to marital property. It is also persuasive that at or near this same time Husband added Wife's name to the deed of the Roger's Lane property that had previously been in Husband's name alone. This may have been the evidence misunderstood by the circuit court that led to the erroneous finding that the Wife's name had been added to the deed of the apartment buildings just prior to the creation of the LLC. At any rate, that evidence supports the circuit court's finding that, despite Husband's testimony to the contrary, Husband intended to transmute both the apartment buildings and the Roger's Lane property into marital property. The circuit court's finding that the apartment buildings were marital property is supported by substantial evidence and must be affirmed. Husband's point is denied.

■ Wife's first point on appeal contends the circuit court erred when it refused to allow Wife to reopen the evidence concerning the best interest of the children after it had entered the interlocutory order approving the joint parenting plan. The parties had commenced the trial on all issues but, after three days of evidence, had presented the circuit court with a stipulated parenting plan resolving the issues of child custody and parenting time within a joint custody plan. Upon the presentation of the joint parenting plan to the circuit court, the court heard evidence concerning the plan from the parties and extensive recommendations from the guardian ad litem. The circuit court was fully engaged in his review and eventual approval of the stipulated parenting plan. Some months later (there was a prolonged hiatus in the presentation of evidence) but before the conclusion of the evidence on the property issues, Wife moved to reopen the evidence on the child custody issues alleging Husband had threatened Wife in a telephone conversation that he would not allow her to see other men and that there had been confrontations between Wife and Husband and Husband's family at the visitation exchanges. After hearing the argument of counsel, which included counsel's proffer of Wife's factual allegations, the circuit court denied the motion to reopen the evidence observing that he had read the motion and found nothing contained therein that, if true, would cause him to change the parenting plan.

Wife relies on this court's decision in *Tompkins v. Baker,* 997 S.W.2d 84 (Mo. App.1999), for the proposition that, even if the parties are bound by their stipulation, the court has an independent duty to insure that the stipulation is in the best interest of the children. In *Tompkins,* this court remanded the case to the circuit

court to hear additional evidence to insure that a stipulation by the parties remained in the best interest of the children. *Id.* at 92. Wife candidly admits that here, unlike the court in *Tompkins,* the court did not solely rely on the stipulation of the parties but heard evidence from the parties and heard the recommendations of the guardian ad litem before finding the joint parenting plan served the best interest of the children, approving the plan, and ordering the parties to abide by the plan. *Tompkins* is not applicable to the case at bar.

Similarly, this case is not one of those cases described in *Wakili v. Wakili,* 918 S.W.2d 332 (Mo.App.1996), in which a party may withdraw from an agreement because the court has not yet approved it.

The case of *In re Marriage of Burton,* 975 S.W.2d 953 (Mo.App.1998), is persuasive. In that case, this court's Southern District found that it was not error when a circuit court refused to allow a party to reopen the evidence after a trial on a custody issue but before a judgment was entered. The relevant portion of that opinion is as follows:

> For his remaining point, Appellant asserts that the trial court erred in not reopening the matter after it was submitted, appointing a guardian ad litem and taking additional evidence as to custody of the parties' children, "because said decision was based upon a misstatement of law and an abuse of the trial court's discretion given the length of time between the time of the trial and the filing of the formal decree and the serious allegations raised in husband's motion to reopen the evidence."
>
> Trial of the matter was concluded on September 10, 1997. On December 12, 1997, Appellant filed a motion to reopen the case. On January 9, 1998, the trial court denied the motion and entered the judgment of dissolution of marriage.

The trial court has considerable discretion to allow a party to reopen the case, and we only reverse such decision "upon a clear showing of abuse of discretion." *Lavin v. Carroll,* 871 S.W.2d 465, 468 (Mo.App.1994).

. . . .

> Relevant to the issue of custody and the appointment of a guardian ad litem for the minor children, Appellant alleged in his motion to reopen the case and take additional evidence:
>
> 1. Respondent moves to reopen the above-captioned case in Part because subsequent to the last day of trial, the parties' minor child, Coy Burton, has been diagnosed as being significantly depressed. Although the school counselor has suggested that the minor child see a therapist to help him with his depression, Petitioner has refused to seek counseling on behalf of the minor child.
>
> 2. The minor child, inconsistent with his grade history, received mid-term grades of 1–F, 3–D's, 1–C+ and 1–B. Subsequent to the last day of trial the minor children [sic] has repeatedly indicated to both parents that he is unhappy at his school and wants to attend school in Hurley School District where he started. Further, subsequent to the last day of trial, both children have been exposed to traumatizing and neglectful behavior on the part of the Petitioner.
>
> These general allegations convince us that there was no abuse of discretion in not reopening the case, and as the matter was not reopened, the appointment of a guardian ad litem would have been meaningless. Point IV is denied.

*Id.* at 954–55.

We find the rationale in *Burton* to be controlling in that the allegations in this case are also general and insufficient to require that the evidence be reopened.

The circuit court appropriately heard evidence on the joint parenting plan proffered by the parties, approved the plan as in the best interest of the children, and did not abuse its discretion when it refused to reopen the evidence for further evidence on the issues of child custody and visitation. Wife's point one is denied.

■■■ Wife's next point alleges the circuit court erred in dividing unreimbursed medical expenses of the children equally between Husband and Wife. Wife contends the circuit court's finding is against the weight of the evidence because both parties testified that a division of any unreimbursed medical expenses of the children should be pro-rata in the same percentages as calculated on the Form 14 Presumed Child Support Amount Calculation Worksheet. Husband concedes the point.

Although Wife accurately cites to the testimony of both parties, the joint parenting plan submitted by the parents for the circuit court's approval did not provide for a pro-rata division of these expenses. The parenting plan, after obligating Husband to provide medical insurance for the children, stated:

2. *Non-covered Costs:*

The parties agree that non-covered healthcare costs are an unresolved issue that will be resolved by the Court pursuant to Missouri law.

The law on this issue is set out in section 454.633.3, RSMo 2000, as follows:

As between a health care provider and the parents of a child, the parents shall be jointly and severally liable to the provider for the reasonable costs of the child's necessary medical care. As between parents, responsibility for the child's care expenses that are not covered by a health benefit plan may be equitably apportioned between the parents by the court or the division, in percentage shares based on their income, or based on a written agreement of the parties. If the order or agreement fails to designate the shares applicable to the parents, then each parent shall be liable for fifty percent of such expenses.

Obviously, the circuit court could have ordered the expenses in pro-rata shares, but the issue was presented to the court, and the court decided to share those expenses equally. In doing so, the circuit court followed the applicable statute and adopted the statutory default of an equal division. This court cannot find the circuit court erred in doing so. Wife's second point is denied.

■■■ Wife's final point is that the circuit court erred by distributing from the sale proceeds of the "Fair St. residence" (a marital asset) the sum of $4,655.00 to Husband to cover additional income tax attributable to the capital gain occasioned by the sale. Wife's complaint centers on the imprecise testimony concerning the amount of the tax. Husband testified he believed that the capital gains tax would be estimated at $4,000.00. No expert testimony was received concerning the amount of the tax attributable to the sale of the property in question. Pertinent to this issue the circuit court made the following findings:

The Court finds as marital property the sum of approximately $55,560, currently held in escrow arising from the sale of real property owned by the parties at 700 East Fair Street, Independence, Missouri (hereinafter Fair). The 2005 joint tax return of the parties reflected a capital gain of $19,190 from the sale resulting in additional income tax attributable to the capital gain and Husband shall be reimbursed from the Fair proceeds the amount of $4,655.00. The Bank of America credit card, having an

approximate balance of $5,570, which represents rehabilitation expenses in connection with the sale of the Fair property, shall be paid from the escrow funds. The Guardian Ad Litem fees shall be paid. Next, all debts ordered to be paid above shall be paid from these proceeds.

█ Tax consequences are a factor to consider in dividing marital assets. *Clark v. Clark,* 801 S.W.2d 95, 99 (Mo.App.1990). The circuit court had a responsibility to deal with the marital liability and did so. Both parties rely on this court's decision in *Homfeld v. Homfeld,* 954 S.W.2d 617 (Mo. App.1997), to support their positions. Wife relies on *Homfeld* for the proposition that the circuit court is not permitted " 'to make deductions to the marital estate for estimated tax liabilities absent sufficient evidence to support its findings.' " *Id.* at 621 (citation omitted). However, the issue the *Homfeld* court was addressing in that quote was not the amount of the tax liability but the actual incurring of the tax liability. The issue the *Homfeld* court was addressing was whether the wife in that case would actually sell the marital residence and incur the tax liability for capital gains and whether the circuit court correctly considered the potential taxes in the division of property not the amount of the capital gains tax. In the case at bar, the "Fair St. residence" had already been sold, and the circuit court was dividing the proceeds of the sale. A tax liability was fixed, and the amount of the capital gain was in evidence from the parties' 2005 joint tax return. The issue raised by Wife is whether the testimony of Husband and his estimate of the tax due is sufficient to support the circuit court's finding. The particular holding in *Homfeld* that is dispositive of this issue is that it is not necessary to have an expert calculate the amount of the potential taxes. *Id.* at 622. Here, as in *Homfeld,* the circuit court had

sufficient facts in evidence, as well as the ability, to determine potential tax consequences resulting from its judgment. The circuit court is deemed to know the tax law. *Sturgeon v. Sturgeon,* 849 S.W.2d 171, 176 (Mo.App.1993). Wife's final point is denied.

The circuit court did not err in determining the apartment buildings titled in the name of R & J Rentals, LLC, were converted to marital property. The circuit court did not abuse its discretion by refusing to allow Wife to reopen the evidence concerning the children's issues after approving a joint parenting plan. The circuit court did not err in either its consideration of capital gains taxes in its distribution of the sale proceeds of marital property or its calculation of capital gains taxes. The circuit court did not err in its determination to split the children's unreimbursed medical expenses equally between the parties. We affirm the circuit court's judgment.

All concur.