**Larry Earnest HOMFELD, Appellant,**

v.

**Katherine Elaine HOMFELD,
Respondent.**

**No. WD 52714.**

Missouri Court of Appeals,
Western District.

Oct. 21, 1997.

Rehearing Denied Nov. 25, 1997.

guardian ad litem incurred these fees solely because of Wife's unfounded allegations.

This court finds that sufficient evidence supports the trial court's consideration of Wife's tax liability in awarding her the marital real estate and Husband a judgment for $87,750. This court also finds that trial court did not err in ordering a sale of the marital property before its judgment became final for purposes of appeal, as the right to execute a judgment accrues immediately, and that sufficient evidence supports the trial court's judgment ordering Husband to pay one-half of the fees for the second guardian ad litem. But, because the trial court erred in not making a record of its calculation of the presumed Form 14 child support amount, the award of child support is reversed and the issue remanded to the court for further action. Therefore, the judgment is affirmed in part, and reversed in part and remanded.

Allen S. Russell, Kansas City, for appellant.

James D. Worthington, Aull, Sherman, Worthington, Giorza & Maycock, Lexington, for respondent.

Before LAURA DENVIR STITH, P.J., and BRECKENRIDGE and HANNA, JJ.

BRECKENRIDGE, Judge.

Larry Homfeld (Husband) appeals from the trial court's order dissolving his marriage to Katherine Homfeld (Wife). Husband contends that the trial court erred by considering possible income tax consequences when it divided the marital real property because there was no evidence to support the computation of possible tax liability. Husband also alleges that the trial court erred in setting his monthly child support obligation at $225 per month without adopting one of the parties' Form 14s or filling out its own Form 14. In addition, Husband claims that the trial court erred by purporting to sell the real property before the order was final because this precluded him from posting a supersedeas bond to stay execution of the judgment. Finally, Husband claims that the trial court erred by ordering him to pay half of the guardian ad litem's fees because the second

## FACTUAL AND PROCEDURAL BACKGROUND

Husband and Wife were married on September 22, 1973. They have three children, Darrick Homfeld, born October 26, 1976; Scott Homfeld, born September 17, 1978; and Leah Homfeld, born June 28, 1983. Husband is a self-employed farmer and Wife is an elementary school teacher. The Homfeld family resided in rural Lafayette County on a 196–acre farm purchased from Husband's parents in 1980. After a period of marital discord, Husband and Wife separated.

Husband filed a petition for dissolution of marriage in the Circuit Court of Lafayette County. In his petition, Husband requested custody of the three minor children, child support, division of the marital property, and his reasonable attorney fees. Wife filed a counterclaim for dissolution of marriage, and also requested custody of the children, child support, a division of the marital property, and her reasonable attorney fees.

The trial court appointed a guardian ad litem, Dennis Rolf, to represent the children's interests in the dissolution proceedings. Thereafter, Wife filed a third-party petition against her son, Scott Homfeld, alleging that Husband and Scott had secreted

assets and withheld information during the discovery process. In response to Wife's motion, the trial court appointed Kelly Halford to serve as guardian ad litem for Scott. Mr. Rolf continued to serve as guardian ad litem for Darrick and Leah.

The dissolution trial lasted several days. Husband and Wife both testified concerning matters of marital property, child support and the history of their relationship. The trial court interviewed all three children in chambers and heard statements from the two guardians ad litem. After taking the matter under advisement, the trial court entered its decree of dissolution on September 14, 1995, dissolving the parties' marriage but taking all other issues under advisement. On December 12, 1995, Husband filed a motion to set aside the decree of dissolution on the ground that he had not received notice after the trial court entered the decree as required by Rule 74.03.[1] On December 20, 1995, the trial court set aside its decree. The following day, the trial court reentered its decree of dissolution, which was identical to the one entered on September 14, 1995.

On February 26, 1996, the trial court entered a supplemental decree of dissolution of marriage. In this decree, the trial court awarded custody of Darrick and Leah Homfeld to Wife and Scott Homfeld to Husband, and set forth specific visitation schedules for the non-custodial parent. The trial court also ordered Husband to pay Wife child support in the amount of $225 per month. In addition, the trial court assigned a value of $115,550 to farm equipment owned by the parties and ordered it sold with the proceeds split equally between Husband and Wife. The trial court found that the fair market value of the parties' real estate was $225,500 and that each party was entitled to one-half interest in the real estate. Because it found that the real estate could not be divided in kind, the court ordered the real estate sold, and the proceeds split between the parties, after payment of all liens and real estate taxes.

Finally, the trial court ordered each party to pay one-half of Mr. Rolf's guardian ad litem fees for his representation of Darrick and Leah Homfeld. As for Ms. Halford, Scott Homfeld's guardian ad litem, the trial court ordered Wife to pay the entire fee of $8,140, because the court found that the filing of Wife's third-party petition implicating Scott as a third-party respondent necessitated Ms. Halford's appointment.

The court entered a corrected supplemental decree of dissolution of marriage, which did not affect any of the issues here on appeal. Thereafter, Wife filed a motion to amend or correct the judgment. In this motion, Wife contended that the trial court erred by ordering her to pay all of Ms. Halford's fees because her third-party petition was not the sole factor necessitating Ms. Halford's appointment. Wife alleged that Scott's refusal to communicate or work with the original guardian ad litem was the actual reason the trial court appointed a new guardian ad litem to represent him.

On March 28, 1996, the trial court entered its second corrected supplemental decree of dissolution of marriage. In this order, the trial court granted Wife the relief she requested in her motion to amend or correct the judgment. The trial court ordered Husband and Wife to each pay one-half of Ms. Halford's $8,140 guardian ad litem fee. As a result, each party was obligated to Ms. Halford for $4,070.

In the meantime, a public auction to sell the marital real estate and farm equipment was held on March 23, 1996. At this auction, Robert Catron, acting on behalf of the Catron Family Limited Partnership, signed a contract to purchase the real estate. On April 15, 1996, Mr. Catron filed a motion to intervene in the dissolution action because he discovered that Husband had leased the mar-

---

1. The version of Rule 74.03 in effect in December, 1995 provided that:
 Immediately upon the entry of an order or judgment, the clerk shall serve a notice of the entry by mail in the manner provided for in Rule 43.01 upon each party who is not in default for failure to appear and who was not present in court in person or by attorney at the time of the entry of such order or judgment. If such notice is not given, the order or judgment shall be set aside for good cause shown upon written motion filed within six months from the entry of the order or judgment.

ital real estate to Husband's brother back in February of 1996 without Wife's consent. Mr. Catron alleged that Husband's actions were intended to "chill the sale" or cloud title to the property, and he asked the trial court to issue an injunction requiring Husband's brother to convey his interest in the real estate to the Catron Family Limited Partnership free and clear of the lease.

On April 22, 1996, the trial court appointed a receiver to take possession of the real estate after it learned that the April 11th closing of the sale to Mr. Catron's partnership did not occur. The court ordered the receiver to take all steps necessary to plant the 1996 corn or soybean crop. On the same day, the trial court granted Mr. Catron's motion to intervene in the dissolution action. On April 29, 1996, after being advised that the March 23, 1996 sale of the marital real estate was conducted without publication of notice, the trial court entered a new order concerning the marital real estate. The trial court again found that the real estate had a fair market value of $225,500, but instead of ordering the real estate sold and the sale proceeds divided equally, the court awarded the marital real estate outright to Wife. After noting its consideration of the tax consequences to Wife upon her sale of the property, the trial court granted Husband a judgment against Wife in the amount of $87,750. Husband filed a timely appeal to this court.

## STANDARD OF REVIEW

On appeal, this court will affirm the dissolution decree unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Woolridge v. Woolridge,* 915 S.W.2d 372, 375 (Mo.App. 1996). "The party challenging a divorce decree bears the burden of demonstrating error." *Id.* A judgment should be set aside with caution and only on a firm belief that the judgment is wrong. *Fulton v. Adams,* 924 S.W.2d 548, 551 (Mo.App.1996). In reviewing the trial court's judgment, this court views the evidence and the inferences there-

from in a light most favorable to the judgment and disregards any and all contrary evidence. *Leone v. Leone,* 917 S.W.2d 608, 611 (Mo.App.1996).

## DIVISION OF MARITAL PROPERTY

As his first point on appeal, Husband claims that the trial court erred by giving him a judgment of only $87,750 after it improperly considered possible income tax consequences to Wife if she were to sell the $225,500 marital real estate. Husband contends that there was no evidence to support the amount of the prospective tax liability or that Wife would actually incur any liability.

Tax consequences are a factor to consider in dividing marital assets. *Clark v. Clark,* 801 S.W.2d 95, 99 (Mo.App.1990). However, the trial court is not permitted "to make deductions to the marital estate for estimated tax liabilities absent sufficient evidence to support its findings." *Baldwin v. Baldwin,* 905 S.W.2d 521, 524 (Mo.App.1995). Here, Wife requested the marital real estate in the division of property, which supports Husband's argument that Wife will not sell the real estate and, therefore, will not owe taxes. Under the trial court's division of marital property, however, a $87,000 judgment was entered against Wife for Husband's interest in the real estate. Wife was not awarded sufficient other property to pay this judgment, and has a limited ability to borrow the funds. Wife testified that she was unsuccessful in her efforts to secure financing to purchase Husband's interest when the real estate was being sold under the court's order. Considering that Husband may execute his $87,000 judgment forty-five days after it becomes final,[2] it is likely that Wife will be forced to sell the real estate to satisfy Husband's judgment. Upon such sale, Wife will incur liability for taxes.

With regard to the amount of the potential taxes, there was testimony at trial of every figure necessary to compute the taxes. There was evidence that the parties purchased the farm for $245,000 in 1980. Timothy Thurman, the Certified Public Accoun-

---

**2.** The trial court stayed execution of the $87,000 judgment in favor of Husband until forty-five days after the decree is final.

tant who prepared the parties' tax returns for the last ten years, identified Husband's federal income tax returns for 1993 and 1994, which were admitted in evidence. During Wife's testimony, the parties' federal tax returns for 1992, 1991 and 1990 were also admitted in evidence. The previous returns included depreciation schedules listing the parties' basis in the real estate, their cost or tax basis in all improvements to the real estate, and the reductions to these bases for depreciation taken. Each return also included a Schedule D outlining the computation of capital gains and losses. Mr. Thurman also described the method of calculating capital gains taxes, including the impact of depreciation. Additionally, both parties testified as to their opinion of the current fair market value of the real estate.

The trial court had sufficient facts in evidence, as well as the ability, to determine potential tax consequences resulting from its judgment. The trial court is deemed to know the tax law. *Sturgeon v. Sturgeon,* 849 S.W.2d 171, 176 (Mo.App.1993). Here, the trial judge actually indicated that he had considerable experience and was well versed in the preparation of tax returns. It was not necessary to have an expert calculate the amount of the potential taxes. Point I is denied.

## CHILD SUPPORT

### *Amount*

In his second point on appeal, Husband contends that the trial court improperly set his child support obligation at $225 per month, retroactive to August 22, 1995, because there was no evidence to support the award and Husband had already satisfied his August 1995 child support obligation. In her proposed Form 14, Wife calculated Husband's child support obligation at $608.27 per month, while Husband offered two proposed Form 14s, one setting his obligation at $0 per month, and the other setting his obligation at $165 per month.

The trial court did not accept either party's proposed Form 14. Instead, the trial court ordered Husband to pay Wife $225 per month. The trial court's own calculation is not in the record before this court. In its findings, the trial court said only that it believed Wife was entitled to the $225 per month "after calculating the appropriate sum of child support wherein split custody is awarded pursuant to Civil Procedure Form No. 14[.]"

In *Woolridge,* this court considered the interplay of Rule 88.01 and Civil Procedure Form Number 14, and provided trial courts with detailed instructions on making child support findings. In holding that the trial court's determination of the correct Form 14 amount must be apparent from the record, this court noted that meaningful appellate review is impossible absent a complete record. *Woolridge,* 915 S.W.2d at 380. Furthermore, this court held that unless the trial court adopts a proposed Form 14 of one of the parties or completes one itself, there is no way for the appellate court to ensure that the trial court undertook the appropriate and necessary analysis under Rule 88.01. *Id.* at 381–82. This court reversed and remanded the trial court's order because the court did not accept either of the parties' proposed Form 14s, complete its own Form 14 worksheet, or at least indicate on the record how the trial court calculated the presumed child support amount under Form 14. *Id.* at 382–83. The reasoning in *Woolridge* was recently approved by the Missouri Supreme Court in *Neal v. Neal,* 941 S.W.2d 501, 504 (Mo. banc 1997).

Here, as in *Woolridge* and *Neal,* the trial court's calculation of the presumed correct child support amount is not apparent from the record. Meaningful appellate review is impossible; therefore, a reversal is required on the issue of child support. *Neal,* 941 S.W.2d at 504. On remand, the trial court should consider *Woolridge* and abide by its instructions in determining and finding for the record the presumed child support amount under Form 14. *Neal,* 941 S.W.2d at 504. Then, if the trial court determines that the presumed amount is inappropriate, it should follow *Woolridge* in making a proper record of the reason the amount is rebutted. *Neal,* 941 S.W.2d at 504.

### Retroactivity

Husband also claims that the trial court erred in making his child support payments retroactive to August 1995 because he had already made a child support payment for that month. At trial, Husband testified that he paid child support to Wife throughout the time of the dissolution action. Husband testified that he paid Wife $825 on August 19, 1995, representing child support payments of $165 each for the months of April, May, June, July and August 1995. Wife acknowledged these payments. In addition, Wife testified that Husband had missed four monthly payments and had reduced the amount he was paying from $244 per month to $165 per month.

The trial court has considerable discretion in matters of child support and in making child support awards retroactive, and its judgment will not be reversed absent an abuse of its discretion. *Wenger v. Wenger*, 876 S.W.2d 735, 740 (Mo.App.1994). On appeal, this court "need not resort to speculation and conjecture in order to fathom what may have been in the mind of the trial judge in determining an appropriate date [for the start of child support payments]. It is the function of the trial judge to 'balance the equities' and we will not substitute our judgment for his." *Id.* at 741 (quoting *Wexelman v. Donnelly*, 782 S.W.2d 72, 76 (Mo.App. 1989)). Additionally, the trial court was free to disbelieve part or all of Husband's testimony, as the court is the sole judge of the credibility of witnesses. *Ritter v. Ritter*, 920 S.W.2d 151, 159 (Mo.App.1996). In light of the evidence of Husband's erratic payments of child support as well as his arbitrary reduction in the amount of child support he paid, the trial court did not abuse its discretion in making his child support obligation retroactive to August 22, 1995.

### ORDER MANDATING SALE OF MARITAL PROPERTY

For his third point, Husband claims that the trial court erred by purporting to sell the marital real property and farm equipment before the trial court's order mandating the sale was final. In its March 1, 1996 corrected supplemental decree of dissolution of mar-

riage, the court appointed a special commissioner to sell the marital real estate and the farm equipment, and divide the proceeds equally between Husband and Wife. On March 23, 1996, the marital real estate and farm equipment were sold. Husband claims that the sale of the real estate and farm equipment before the order mandating the sale became final for purposes of appeal denied him the opportunity to stay execution of the trial court's judgment ordering the sale.

Missouri law distinguishes between a judgment that is final for execution purposes and a judgment that is final for appeal. *State ex rel. Turner v. Sloan*, 595 S.W.2d 778, 780 (Mo.App.1980). The right to appeal accrues after the "lapse of the period of judicial control of the adjudication." *Id.* A judgment becomes final for appeal at the expiration of 30 days after the judgment was entered, unless a motion for new trial is filed. Rule 81.05(a).

On the other hand, the right of a party to execute a judgment accrues *immediately* upon entry of the judgment. *Fielder v. Fielder*, 671 S.W.2d 408, 410 (Mo.App. 1984). Thus, a party wishing to execute a judgment does not have to wait until the judgment becomes final for purposes of appeal. *See State ex rel. Turner*, 595 S.W.2d at 780. Pursuant to Rule 81.09(a), a party can stay execution of a judgment by filing a supersedeas bond, "at or prior to the time of filing notice of appeal." Husband's contention that he could not file an application to post a supersedeas bond until after the judgment became final for appeal purposes is simply wrong. The right to execute the judgment accrued immediately upon the entry of the March 1, 1996 judgment, and Husband took no steps to stay the execution.

Further, Husband fails to demonstrate any prejudice resulting from the sale of the real property and the farm equipment. The trial court's April 29, 1996 order set aside the sale of the real estate. Although the order did not set aside the sale of the farm equipment, Husband was not prejudiced by its sale either, as he had no meritorious claim of error on appeal. Husband specifically testified at trial that he wanted

the court to auction the marital real estate and the farm equipment, and a party cannot complain on appeal of error in which he joined or acquiesced at trial. *Taylor v. Taylor,* 908 S.W.2d 361, 363 (Mo.App.1995). Point III is denied.

### GUARDIAN AD LITEM FEES

As his final point on appeal, Husband alleges that the trial court abused its discretion in ordering both parties to satisfy a portion of Ms. Halford's fees. He contends that Ms. Halford's presence in the case was necessitated by Wife's unproven allegations against Scott, and therefore, the trial court should have ordered Wife to pay all of Ms. Halford's fee.

 Under § 452.423.1, RSMo 1994,[3] the trial court may appoint a guardian ad litem in dissolution cases where custody, visitation, or support of a child is at issue. Here, the trial court was justified in appointing a guardian ad litem to represent the minor children's interest because all of these issues were before it. Section 452.423.4, RSMo 1994, provides for the payment of the guardian ad litem fees:

> The guardian ad litem shall be awarded a reasonable fee for such services to be set by the court. The court, in its discretion, may award such fees as a judgment to be paid by any party to the proceedings, or may tax such fees as costs to be paid by the party against whom costs are taxed, or from public funds. Such an award of guardian fees shall constitute a final judgment in favor of the guardian ad litem. Such final judgment shall be enforceable against the parties in accordance with chapter 513, RSMo.

Pursuant to this statute, the appellate court should not disturb the trial court's award of guardian ad litem fees absent an abuse of discretion. *Lindell v. Coen,* 896 S.W.2d 525, 529 (Mo.App.1995).

 The court is permitted to consider the circumstances requiring the appointment of a guardian ad litem in determining

the payment of the guardian ad litem fees. *Id.* It is clear from the record that the trial court appointed Ms. Halford to serve as guardian ad litem for Scott after Wife filed a third-party petition designating Scott as a third-party respondent. However, there was also evidence in the record that Scott was uncooperative with Mr. Rolf, his original guardian ad litem, and there were allegations of violence between Darrick and Scott. The trial court is the sole judge of the "weight and value to be given to the testimony of any witness." *Wynn v. Wynn,* 738 S.W.2d 915, 918 (Mo.App.1987). In light of the conflicting evidence before the trial court, it did not abuse its discretion in ordering the parties to each pay one-half of Ms. Halford's fees.

The judgment of the trial court requiring Husband to pay child support of $225 per month is reversed and remanded for the trial court to consider *Woolridge* and abide by its instructions in making a record of its calculation of the presumed child support amount under Form 14. If the trial court determines that the presumed amount is inappropriate, it should follow *Woolridge* in making a proper record with respect to why the amount is rebutted. The judgment of the trial court is affirmed in all other respects.

All concur.

---

**3.** Section 452.423 was amended on July 1, 1997. However, because the trial in this case occurred in 1995, the amendment is not relevant.