**Evelyn Sue KAUFFMAN, Appellant–Respondent,**

v.

**Thomas A. KAUFFMAN, Respondent–Appellant.**

**Nos. WD 60132, 60163.**

Missouri Court of Appeals, Western District.

Jan. 31, 2003.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 1, 2003.

As Modified April 1, 2003.

---

Paul T. Graham, Jefferson City, MO, for appellant-respondent.

Leslie M. Schneider, Columbia, MO, for respondent-appellant.

Before BRECKENRIDGE, P.J., HOWARD and HOLLIGER, JJ.

PATRICIA BRECKENRIDGE, Judge.

Evelyn Sue Kauffman and Thomas A. Kauffman appeal the trial court's judgment dissolving their marriage. In three of Wife's four points on appeal, Wife contests the sufficiency of the evidence to support the court's identification of certain property as Husband's separate property. In her other point, Wife contests the sufficiency of the evidence to support the court's valuation of certain marital property awarded to Husband. In his appeal, Husband alleges error in (1) the court's identification of certain property as half marital; (2) the court's finding that Husband had not accounted for income he had received after separation; (3) the trial court's consideration of the tax cost in valuing assets; and (4) the trial court's award of $54,334.51 in attorney's fees and $6,969.00 in expert fees to Wife. This court finds that the court erred in its identification and valuation of certain property and in its award of certain attorney's fees and experts' fees. The judgment of the trial court is reversed, in part, and affirmed, in part.

## I. Factual and Procedural Background

Wife and Husband were married on June 29, 1963. They had three children, who are now grown and emancipated. During the marriage, Husband worked at IBM until he retired in 1992. In recent years, Husband became involved in several business enterprises with his father and his siblings. The enterprises engaged in transactions involving real estate investment, billboard rentals, demolition, excavation, and construction. Wife was primarily a homemaker, but she also worked briefly outside the home doing assembly-line work, clerical work, housekeeping, and ba-

bysitting. Wife also performed manual labor on the parties' rental property and 128–acre farm, where they raised cattle.

Wife filed her petition for dissolution of marriage on June 30, 1999. Trial was held, and the court entered its judgment dissolving the parties' marriage and dividing their property on February 22, 2001. Both Wife and Husband appealed.

## II. Standard of Review

This court will affirm the judgment in a dissolution of marriage proceeding unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *King v. King*, 66 S.W.3d 28, 32 (Mo.App.2001). All four of Wife's points and one of Husband's points concern either the identification of property as marital or non-marital or the valuation of property. " 'The trial court has broad discretion in identifying marital property.' " *Luckeroth v. Weng*, 53 S.W.3d 603, 609 (Mo.App.2001) (quoting *McGowan v. McGowan*, 43 S.W.3d 857, 866 (Mo.App. 2001)). Likewise, the trial court also has broad discretion in valuing marital property. *Rhodus v. McKinley*, 16 S.W.3d 615, 620 (Mo.App.2000). The trial court abuses its discretion only if the "ruling is clearly against the logic of the circumstances then before it and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Wright v. Wright*, 1 S.W.3d 52, 57 (Mo. App.1999). " 'If reasonable persons can differ about the propriety of the trial court's action, it cannot be said that the trial court abused its discretion.' " *Id.* (quoting *Collins v. Collins*, 875 S.W.2d 643, 647 (Mo.App.1994)).

Where the court's identification of property as marital or separate turns on a determination of the credibility of wit-

nesses, this court defers to the trial court's determination. *Beckham v. Beckham*, 41 S.W.3d 908, 911–12 (Mo.App.2001). Also, where there is conflicting evidence regarding valuation of property, this court defers to the trial court's resolution of the conflict. *McGowan*, 43 S.W.3d at 864. "When the trial court's valuation of property is within the range of conflicting evidence of value offered at trial, the court acts within its discretion to resolve conflicts in evidence." *Taylor v. Taylor*, 25 S.W.3d 634, 644 (Mo.App.2000).

■ There is a statutory presumption that all property acquired by either spouse subsequent to marriage but before a legal decree of separation or dissolution is marital property, regardless of how the property is titled. Section 452.330.3, RSMo 2000.[1] This presumption may be overcome, however, by showing that the property was acquired by one of the methods listed in section 452.330.2. Section 452.330.3. The methods listed in section 452.330.2 are:

(1) Property acquired by gift, bequest, devise, or descent;

(2) Property acquired in exchange for property acquired prior to the marriage or in exchange for property acquired by gift, bequest, devise, or descent;

(3) Property acquired by a spouse after a decree of legal separation;

(4) Property excluded by valid written agreement of the parties; and

(5) The increase in value of property acquired prior to the marriage or pursuant to subdivisions (1) to (4) of this subsection, unless marital assets including labor, have contributed to such increases and then only to the extent of such contributions.

The party claiming the property is separate property has the burden of proving it by clear and convincing evidence. *King*, 66 S.W.3d at 36.

### III. Wife's Appeal

#### A. Error in Identifying Husband's Interest in All Family Business Enterprises As His Separate Property

In Wife's first point, she argues that the trial court erred in identifying Husband's interest in various family business enterprises as Husband's separate property. The evidence at trial showed that, throughout the marriage, Husband was involved in several business enterprises with his father, two brothers, and sister. Some of these enterprises were formalized as partnerships or limited liability companies, while others were loosely-formed. Because the nature of Husband's interest in these enterprises varies, the enterprises will be discussed separately.

Husband's father, William J. Kauffman, is the general partner in the William J. Kauffman Limited Partnership. In the 1970s, Mr. Kauffman began giving equal units of interest in his limited partnership to his four children. Eventually, each of William's children, including Husband, acquired six units of interest in the William J. Kauffman Limited Partnership. William testified at trial that he gave these interests in his partnership to his children for the purpose of "get[ting] them out of [his] estate." After giving these units of interest in the limited partnership to his children, William's interest continued to be that of a general partner, while his four children became limited partners. William did not give any interest in his limited partnership to Wife.

Both Husband and William testified that the limited partnership receives income from monthly payments made on rental

---

1. All statutory references are to the Revised Statutes of Missouri 2000.

property located in Jefferson City. Apparently under the terms of the limited partnership agreement, which was not included in the record on appeal, William has and will receive all of the partnership income until his death. William's children, including Husband, have not received any income from the limited partnership and will not until William dies.

■ Although Husband acquired his interest in the William J. Kauffman Limited Partnership during the marriage, Husband presented sufficient evidence that he acquired his interest as a gift from his father, thereby rebutting the presumption that his interest was marital property. Section 452.330.3 and .2(1). The partnership certificate showed that the interest in the limited partnership was given only to Husband, Husband testified that William gave the interest only to him, and William testified that he gave the interest in the partnership only to Husband and not to Wife. The trial court was free to believe Husband's and William's testimony as to Husband's acquisition of his interest in the limited partnership. *Thill v. Thill*, 26 S.W.3d 199, 203 (Mo.App.2000) (stating that "[t]he trial court is free to believe or disbelieve all, part, or none of the testimony given by any of the witnesses"). Likewise, the trial court was free to believe Husband's and William's testimony that Husband received no income from his interest in the limited partnership during the marriage. Thus, the trial court did not err in designating Husband's interest in the William J. Kauffman Limited Partnership as his separate property. Section 452.330.2(1).

In addition to interests in his limited partnership, William Kauffman also gave his children interests in real property west of Jefferson City, which the family refers to as "Westland." In 1977, William and his wife, Leona B. Kauffman, gave a tract of this property in equal shares to their four children. Husband and his three siblings took the property as tenants in common. The Kauffman family calls this tract the "Yellow Freight" property. Several years later, in 1991, William gave another tract of Westland property to his four children in equal shares, as tenants in common. The family calls this property the "Apache Trail" property.

■ William testified that he did not give an interest in either the Yellow Freight or the Apache Trail property to Wife, and the deeds show that William conveyed the property only to Husband and his siblings, and not to Wife. Likewise, Husband testified that William gave an interest in the property only to him, and that he never conveyed any of his interest in them to Wife. The trial court was free to believe the testimony of Husband and William that Husband acquired his interest in the Yellow Freight and Apache Trail property as a gift from William. *Id.* The trial court did not err in designating Husband's interest in the Yellow Freight and Apache Trail property as his separate property. Section 452.330.2(1).

Husband was also involved in business enterprises with his two brothers. In 1993, after Husband retired from IBM, he started doing business with his brother, Kenneth, as equal partners. In their business, they bid on various demolition, excavation, and construction jobs. Husband was responsible for doing the bookkeeping and paperwork and being a gofer, while Kenneth was responsible for helping Husband prepare bids for jobs, reading the job plans, and actually doing the jobs. They operated their business out of Husband and Wife's home, and their letterhead indicated the marital residence as the business address. The business had a bank account at Firstar Bank, in which it deposited income and from which it paid expenses.

Husband and Kenneth initially called their business "Kauffman Brothers," but then later formed, "Kauffman Brothers, LLC." [2] Kauffman Brothers, LLC stopped doing business sometime in late 1999 or 2000 but still maintained the bank account.

 Husband acquired his one-half interest in the business with Kenneth during the marriage and prior to the date of dissolution; thus, under section 452.330.3, his interest is presumed to be marital property. Husband presented no evidence that his interest in Kauffman Brothers and its successor, Kauffman Brothers, LLC is his separate property and, in fact, Husband concedes in his brief that Wife has a marital interest in $25,000 Kenneth withdrew from the Kauffman Brothers, LLC Firstar Bank account.[3] The trial court erred in finding that Husband's one-half interest in Kauffman Brothers, LLC is Husband's separate, non-marital property. That portion of the judgment is reversed, and the cause is remanded to the trial court to amend the judgment to designate Husband's one-half interest in Kauffman Brothers, LLC as marital property and to divide the asset accordingly.

In January 2000, Husband and his other brother, Richard, formed what they described as a "loose partnership arrangement" in which they are equal partners. Together, Husband and Richard bid on various jobs, such as trimming trees, installing grease traps, and building a drainage system. Husband does all of the bookkeeping for the business and some of the labor, while Richard does the majority of the labor. Husband and Richard call their business "Kauffman Enterprises." [4]

 Husband and Richard formed Kauffman Enterprises after Husband and Wife physically separated. Husband and Wife were not *legally* separated at the time, however, so under § 452.330.3, Husband's interest in Kauffman Enterprises is marital property. Husband did not present any evidence to the contrary and, indeed, appears to concede that his interest in Kauffman Enterprises is marital property.[5] Therefore, the trial court's finding

2. In its judgment, the trial court refers to the "Tom Kauffman and Ken Kauffman Partnership," and "Kauffman Brother [sic] Excavation." The record before this court is unclear as to whether any of the Kauffman family businesses in which Husband was involved was called by these names. This court will assume that these names refer to Husband and Kenneth Kauffman's business. For the sake of clarity, this court will refer to Husband and Kenneth Kauffman's business as simply Kauffman Brothers, LLC.

3. See discussion of Wife's second point in Section III.B., *infra.*

4. In its judgment, the trial court refers to "Kauffman Brothers Enterprises" and the "Thom Kauffman and Richard Kauffman Partnership." The record on appeal does not indicate that any of the Kauffman family businesses in which Husband was involved were called by these names. The record shows that the only business Husband and Richard operate together is called "Kauffman Enter-

prises." This court will assume that the reference to "Kauffman Brothers Enterprises" and the "Thom Kauffman and Richard Kauffman Partnership" refers to "Kauffman Enterprises," and this court will call Husband and Richard Kauffman's business simply "Kauffman Enterprises."

5. In his discussion of his interest in Kauffman Enterprises, Husband argues that the court erred in setting aside to him as marital property all of the bank account at People's Bank of Jamestown that he claims he and Richard use to operate Kauffman Enterprises. Husband contends that only one-half of the account is marital property, and the other one-half of the account belongs to Richard. Husband offered no support, other than his own testimony, for his contention that this account is Kauffman Enterprises' account and only one-half of the account is marital. The trial court was free to disbelieve Husband's testimony. *Thill v. Thill,* 26 S.W.3d 199, 203 (Mo.App.2000).

that Husband's one-half interest in Kauffman Enterprises is his separate property is reversed. On remand, the trial court is directed to amend the judgment to find that Husband's one-half interest in Kauffman Enterprises is marital property and to divide this asset accordingly. Wife's first point is granted, in part, and denied, in part.

### B. Claim Husband May Have Against His Brother is Marital

In her second point, Wife argues that the trial court erred in designating as Husband's separate property any claim Husband may have against his brother, Kenneth, for $25,000.00. At the time of the trial, the operating account of Kauffman Brothers, LLC had a balance of approximately $5,488.71. The account history, however, showed that in April 2000, a check for $25,000.00, made payable to Ken Kauffman Excavating, was written. Husband denied knowing about the check or having discussed the check with his brother before the check was written. On cross-examination, Husband testified that he had had a falling out with Kenneth and planned to find out why Kenneth took $25,000.00 out of the account "just as soon as" the dissolution proceeding was over.

■ Despite finding that Husband's one-half interest in this bank account is marital property, the court found that any claim Husband may have for the $25,000.00 Kenneth Kauffman withdrew is not marital property. Husband concedes that the court's ruling on this issue was erroneous and agrees with Wife that any claim he has against his brother for this money is marital property. Therefore, the trial court's finding that Husband's claim for $25,000.00 against his brother Kenneth Kauffman is not marital property is reversed. On remand, the trial court is directed to correct the judgment to find that

this property is marital and divide it accordingly. Wife's second point is granted.

### C. Valuation of Martin Note Erroneous

In her third point, Wife argues that the trial court's valuation of a note owed to the parties by Stanley and Mary Martin was erroneous. Specifically, Wife contends that the court erred in valuing the note, which the court found to be marital property and awarded to Husband, at only $2,000.00.

■ The evidence at trial on this issue was that Husband and Wife were the holders of a promissory note owed by the Martins. Counsel for Husband and Wife stipulated that the note had not been paid off. Both Husband and Wife testified that the promissory note was for the amount of $9,000.00. There was no evidence that the value of the note was anything other than $9,000.00. The court's valuing the note at $2,000.00 was not supported by substantial evidence and was against the weight of the evidence. Therefore, the court's finding that the value of the Martin note is $2,000.00 is reversed. On remand, the trial court is directed to correct the judgment to value the Martin note at $9,000.00 and utilize the corrected value in its division of assets. Wife's third point is granted.

### D. Firstar Account # 377000895 is All Marital

In her fourth point, Wife argues that the trial court erred in identifying Firstar account # 377000895 to be one-half marital and one-half non-marital property belonging to Husband's family. At trial, Wife offered records from Firstar Bank showing that only she and Husband were listed as owners of the account. There was no evidence presented indicating that anyone other than Wife and Husband owned the account.

██ Husband concedes that the trial court's finding that the account is only one-half marital is erroneous and agrees that the entire account is marital. Therefore, the trial court's finding that Firstar account # 377000895 is only one-half marital is reversed. On remand, the trial court is directed to amend its judgment to show that all of Firstar account # 377000895 is marital property and to divide the asset accordingly. Wife's fourth point is granted.

## IV. Husband's Appeal

### A. Bank Accounts are Half Marital and Northview Property is Marital

In his first point, Husband argues that the trial court erred in finding that certain bank accounts at Firstar Bank and Home Savings Bank are half marital and in finding that certain real property, called the "Northview" property, is marital property. Husband contends that the bank accounts were funded from proceeds from the condemnation of a portion of his separate Westland property and that the Northview property was purchased with some of the condemnation proceeds. Because property acquired in exchange for property acquired by gift is separate property under section 452.330.2(2), Husband argues that the bank accounts and Northview property are his separate property.

Looking first at the bank accounts that Husband alleges the court erroneously found to be half marital, the bank records listed the owners of the accounts to be Kenneth W. Kauffman and Thomas A. Kauffman. The records also indicate that all of the accounts were opened during the marriage. Thus, Husband's share of the accounts is presumed to be marital property. Section 452.330.3.

██ Husband offered his own testimony to attempt to rebut this presumption. Husband testified that two of the accounts, Firstar checking account # 3770000572, and Firstar certificate of deposit # 377000514, contained only income from rentals of billboard signs located on the Westland property that was given to Husband and his siblings by their father. Although this court has found that this real property is Husband's separate property, income earned during the marriage on separate property is marital property. *Coleberd v. Coleberd,* 933 S.W.2d 863, 868 (Mo.App.1996). Therefore, Husband's share of the income earned on the rentals of signs located on his separate property is marital property. The trial court did not err in finding that the Firstar checking account and certificate of deposit that contained Husband's and Kenneth's income from the Westland sign rentals are half marital.

██ Husband also testified that Firstar certificates of deposit # 61946978, # 61947048, and # 377002065 contained only the proceeds Husband received from the condemnation of a portion of his separate Westland property. Husband offered no other evidence to support his testimony that these accounts contained only his share of the condemnation proceeds. The trial court was free to disbelieve Husband's testimony. *Thill,* 26 S.W.3d at 203. Where, as here, the identification of property as separate or marital turns on the credibility of witnesses, this court will defer to the trial court's credibility determination. *Beckham,* 41 S.W.3d at 911–12. Here, the trial court made its credibility determination regarding Husband clear:

> The Court finds that [Husband] has hidden and failed to disclose substantial marital property. Specifically, until the day of trial and only in response to subpoenas issued by [Wife] and [Hus-

band]'s own attorney, [Husband] failed to disclose substantial amounts of money on deposit with Union Planters and Firststar [sic] Bank although under a duty to do so imposed by Court rule and under a duty to do so imposed by Court order. On April 20, 2000, this Court specifically ordered [Husband] to produce documents including all bank statements, deposit slips, and canceled checks, where the checks were paid by or to business entities in which he has an interest. This Court finds that [Husband] never substantially complied with that order. Ironically, [Husband] took the position at trial that the accounts mentioned above with Union Planters and Firststar [sic] Bank were the property of business entities in which he had an interest. Many of these accounts, however, were not found until Firstar was specifically ordered by this Court to appear at trial in response to a valid subpoena or be incarcerated.

The Court also finds that [Husband] has sought to hide a substantial number of cattle from the Court, moving them from the parties' farm to his father's farm.

The trial court did not err in finding that one-half of Firstar certificates of deposit # 61946978, # 61947048, and # 377002065 is marital property.

■ The last Firstar account which Husband alleges the court erroneously determined to be half marital is a money market account, # 377000299. Husband

offered no testimony as to the source of the funds in this account. Therefore, he failed to rebut the presumption that his share of the account is marital. Section 452.330.3. The trial court did not err in finding that one-half of this account is marital property.

In addition to these Firstar accounts, Husband contends that the court erred in finding that three certificates of deposit in his and Kenneth's name at Home Savings Bank, # 4320, # 4281, and # 4235, are half marital.[6] Like the Firstar accounts, all of the Home Savings certificates of deposit were opened during the marriage and Husband's share of these certificates is, therefore, presumed to be marital property. Section 452.330.3.

To rebut this presumption, Husband testified that certificate # 4320, with a balance of $6,448.82, and certificate # 4281, with a balance of $23,164.62, were comprised solely of funds he and Kenneth received from the Missouri Highway Department for the condemnation of a portion of the Westland property. Husband notes that certificate # 4230 contains the notation, "Reference: Sm Hwy Yellow," which he testified meant money that he and Kenneth received from the Highway Department for the condemnation of the Yellow Freight property; and that certificate # 4281 contains the notation, "In reference to: SM HWY Northside," which Husband testified meant money that he and Kenneth received from the Highway Department for the condemnation of the

---

6. In his point relied on, Husband refers to the Home Savings Bank certificates of deposit by three account numbers. One of the account numbers Husband cites, 505262–22, is not mentioned anywhere in the record and does not appear to exist. Another account number Husband cites in his point relied on, 505262–20, refers to an account that the court found to be all marital. Only one of the account numbers Husband cites in his point relied on refers to an actual Home Savings account that the court found to be half marital. In the argument portion under this point, however, Husband refers to the certificates of deposit by their certificate numbers. The three certificate numbers Husband cites refer to three Home Savings Bank certificates of deposit that the court found to be half marital. For clarity's sake, this court will refer to the certificates by their certificate numbers.

north side of Highway 50, also known as the Apache Trail property.

■ Husband offered no other evidence to support his contention that his share of these two certificates of deposit were comprised solely of funds he received from the condemnation of his separate Westland property. The trial court was free to disbelieve both Husband's testimony and the notations on the certificates, which were presumably written at Husband's direction. *Thill*, 26 S.W.3d at 203. This court will defer to the trial court's determination of Husband's credibility. *Beckham*, 41 S.W.3d at 911–12. Because Husband failed to present clear and convincing evidence to rebut the presumption that his share of Home Savings certificates of deposit # 4320 and # 4281 is marital, the trial court did not err in finding that one-half of these certificates is marital property.

As for certificate # 4235, which is also in Husband's and Kenneth's names and has a balance of $4,621.62, Husband points out that it contains the notation, "Reference Westland/Northview property." Husband testified this notation refers to the down payment the Martins made when they purchased a portion of the Northview property from Husband. Because Husband contends that he purchased the Northview property with proceeds from the condemnation of a portion of his separate Westland property, Husband argues that the Martins' down payment on the portion of the Northview property they purchased from Husband is his separate property under Section 452.330.2(2).

The Northview property was purchased for $26,500.00 in 1998, during the marriage, but was titled only in Husband's name. In 1999, Husband sold half of the Northview property to the Martins, for the price of $13,500.00. The Martins made a down payment of $4,500.00, and gave a

promissory note, made payable to Husband and Wife, for the remaining $9,000.00. The trial court found that the portion of the Northview property Husband did not sell to the Martins was marital property, as was the promissory note from the Martins made payable to Husband and Wife for the portion Husband did sell, and one-half of certificate # 4235, which Husband testified contained the Martins' down payment.

■ Although Husband titled the Northview property in his name only, he acquired the property during the marriage, thus, the Northview property is presumed to be marital property. Section 452.330.3. The only evidence Husband offered to rebut the presumption was his own testimony that he purchased the Northview property with condemnation proceeds from his separate Westland property. Again, the trial court was free to disbelieve Husband's testimony that he purchased the Northview property with his separate funds. *Thill*, 26 S.W.3d at 203. Therefore, the trial court was free to find that when Husband sold a portion of the Northview property to the Martins, Husband's portion of the down payment received, which was deposited into Home Savings certificate # 4235, was also marital property. Because Husband failed to present clear and convincing evidence to rebut the presumption that his share of certificate # 4235 is marital, the trial court did not err in finding one-half of the value of this certificate is marital property.

It should be noted that Husband argues that the court's finding that these bank accounts and the Northview property are half marital contradicts the court's other finding that his interest in the Westland property is his separate property. To the contrary, the court's finding that Husband held a one-half interest in the bank accounts and his one-half interest was mari-

tal merely indicates that the court did not believe Husband's testimony that his share of the bank accounts were funded with, and the Northview property was purchased with, proceeds Husband received from the condemnation of portions of his separate Westland property. Husband failed to present clear and convincing evidence to rebut the marital presumption regarding his share of the accounts and the Northview property. Husband's first point is denied.

### B. No Error in Attributing Income to Husband

In his second point, Husband argues that the trial court erred in finding that he failed to account for income from monthly note payments, IBM retirement payments, and the sale of livestock, which he received during the parties' separation. In its judgment, the court attributed to Husband $56,231.50 in income from these sources. The court explained that the reason it was attributing this income to Husband was because Husband had not accounted for his use of these funds. Husband argues this was against the weight of the evidence because Wife acknowledged that Husband "probably used some of" the IBM retirement payments to live on, and Husband testified that he used the income from these sources to pay temporary maintenance to Wife and to make payments on marital debt. Husband notes that his expenditures for temporary maintenance and marital debt totaled $64,694.00, an amount that exceeds the income the court attributed to him. Thus, Husband argues that he sufficiently accounted for his use of this income.

The evidence showed, however, that Husband had more sources of income during the parties' separation than simply the monthly note payments, his IBM retirement payments, and the sale of livestock. During the parties' separation, Husband was still doing business in Kauffman Brothers, LLC with his brother Kenneth,[7] and Kauffman Enterprises with his brother Richard, and receiving income from these businesses. Additionally, Husband was receiving income from his separate property. Husband offered no receipts or documentation to support his assertion that he used the income from the monthly note payments, his IBM retirement payments, and the sale of livestock to live on. "The trial court was at liberty to believe or disbelieve [Husband]'s explanation that he used the funds to pay marital expenses." *Bland v. Bland,* 652 S.W.2d 690, 692 (Mo.App. 1983). Likewise, although the trial court found Wife's testimony credible on other issues, the trial court was free to disregard her speculative testimony that Husband "probably used some of" the IBM retirement payments to live on during the separation. *Thill,* 26 S.W.3d at 203. The trial court did not abuse its discretion in attributing to Husband income he received during the separation from monthly note payments, his IBM retirement payments, and the sale of livestock. Husband's second point is denied.

### C. No Error in Considering Tax Cost

In his third point, Husband argues that the trial court erred in considering the tax cost in valuing certain assets. In its judgment, the court stated that it was discounting the value of certain assets for their tax cost, which the court explained represent-

---

**7.** Husband testified that Kauffman Brothers, LLC stopped doing business in June 1999 because he decided that if Wife was serious about filing a divorce from him, there was not any sense in him working. The evidence showed, however, that Kauffman Brothers, LLC continued doing business after the parties separated.

ed income taxes that would be occasioned by the sale of the assets or income taxes that were owed on the assets. The court stated that it considered tax cost only on those assets on which tax cost evidence was presented. These assets included stocks, bonds, promissory notes, the farm, two pieces of undeveloped real property, a warehouse and its contents, farm equipment, Husband's IBM deferred savings plan, a billboard, income from the sale of livestock, cars, and Husband's IBM retirement payments received since separation.

Husband first alleges in his point relied on that the court erred in receiving this evidence because the evidence was adduced after trial, even though it was available at the time of the trial. The court initially heard evidence in this case on September 28 and 29, and October 6, 2000. On December 14, 2000, Wife filed a motion asking the court to take evidence on the tax cost of assets. In the motion, Wife alleged that during a status hearing,[8] the parties agreed that the court would receive tax cost evidence after it made its preliminary findings dividing the parties' property. Wife requested that the court hold a hearing to receive evidence as to the tax cost of the assets.

A hearing was held on January 22, 2001. At the start of the hearing, Husband's attorney objected to the court's hearing any additional evidence. Husband's attorney argued that the evidence was closed at the completion of the last hearing date and the issues Wife wanted to present were not properly before the court at that time.[9] In response, Wife's attorney contended that before trial, the parties had agreed in chambers that if the court found certain assets to be marital property, the tax cost of those items would be assessed and presented to the court. Husband's attorney then stated that she remembered a discussion regarding tax consequences, but her recollection was that tax cost would not be considered until the court made its final decision regarding the division of property. Husband's attorney argued that the court's decision as it existed at that time was only preliminary. The court stated that it remembered discussing with the parties during the trial that it had no information about the tax consequences, so the court would receive evidence on this subject. Wife then presented the testimony of Dale Siebeneck, a certified public accountant, as to the tax cost of certain assets and the net value of the assets after their tax cost is considered.

▮▮▮ "The trial court has considerable discretion to allow a party to reopen the case," and this court will reverse the trial court's decision to do so only " 'upon a clear showing of abuse of discretion.' " *In re Marriage of Burton,* 975 S.W.2d 953, 955 (Mo.App.1998) (quoting *Lavin v. Carroll,* 871 S.W.2d 465, 468 (Mo.App.1994)). Husband does not allege how the court's decision to hear evidence of the tax cost of assets after the initial trial dates but prior to the entry of the final judgment dividing the parties' property constituted an abuse of discretion. Without such a showing, this court cannot say that the court's decision to do so, in and of itself, was erroneous.

Husband next argues the court erred in considering the tax cost of certain assets

---

**8.** Wife does not state when the status hearing occurred, but it was presumably after the October 6, 2000 trial date.

**9.** In addition to asking the court to hear evidence as to the tax cost of the assets, Wife asked that the court hear evidence of the appraised value of the Yellow Freight and Apache Trail property and a billboard located on the Yellow Freight property.

because it was speculative and based upon information that was outside the record. Specifically, Husband contends that some of the information Mr. Siebeneck relied upon to calculate the tax cost was not in the record and was supplied by Wife's attorney, and, in other instances, Mr. Siebeneck had no information as to the cost bases of certain assets and instead relied on his own assumptions.

Husband raises his complaint about the factual bases of Mr. Siebeneck's opinions for the first time on appeal. "If a question exists as to whether the proffered opinion testimony of an expert is supported by a sufficient factual or scientific foundation, the question is one of admissibility. It must be raised by a timely objection or motion to strike." *Washington by Washington v. Barnes Hosp.*, 897 S.W.2d 611, 616 (Mo. banc 1995). Husband did not object to Mr. Siebeneck's opinions during the hearing. Therefore, Husband waived any issue he may have about the factual or scientific bases for these opinions. *See id.*

Husband's last argument regarding the court's considering the tax cost in valuing certain assets is that tax cost is relevant only if the assets are going to be sold, and there was no evidence that any of the assets for which tax cost was considered would be sold. Tax consequences are a factor for the court to consider in dividing marital assets. *Homfeld v. Homfeld*, 954 S.W.2d 617, 621 (Mo.App.1997). The court cannot, however, " 'make deductions to the marital estate for estimated tax liabilities absent sufficient evidence to support its findings.' " *Id.* (quoting *Baldwin v. Baldwin*, 905 S.W.2d 521, 524 (Mo.App. 1995)). Husband argues the only asset

Wife testified that she might have to sell if it was awarded to her was the marital residence, and the marital residence has no tax cost.

Although Wife did not testify as to other marital assets she might have to sell, the record supports the inference that Wife will have to sell assets to meet her living expenses. Wife was fifty-seven years old at the time of the trial, had no high school diploma, and was unemployed. Her employment outside of the home included an assembly-line job and a clerical job that she held in the early 1960s, and a job as a housekeeper and babysitter that she held from 1985 to 1996. In light of Wife's relatively low income-earning potential, and the fact that most of the assets awarded to Wife are non-cash and non-income producing, the court could reasonably infer that Wife will have to sell assets to meet her needs at some point in the future.[10] Moreover, Husband does not claim that the trial court's consideration of the tax cost on any of the assets valued by Mr. Siebeneck, which included marital assets awarded to Husband, rendered the court's distribution of the marital property unfair. *Hogan v. Hogan*, 796 S.W.2d 400, 408 (Mo.App.1990). The trial court did not abuse its discretion in considering the tax cost in valuing certain assets. Husband's third point is denied.

### D. Attorney's Fees Award is Abuse of Discretion; Insufficient Evidence to Support Certain Experts' Fees

In his final point, Husband contends that the trial court erred in ordering him to pay $54,334.51 in Wife's attorney's fees and $6,969.00 in Wife's experts' fees. Section 452.355.1 provides that the court can

---

**10.** Mr. Siebeneck testified that in calculating the tax cost, he did not assume that the assets would necessarily be sold in the tax year

2000, but only that the property "might be sold at some point in time."

order a party to pay attorney's fees in a dissolution action:

> Unless otherwise indicated, the court from time to time after considering all relevant factors including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of the action, may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding pursuant to sections 452.300 to 452.415 and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding and after entry of a final judgment. The court may order that the amount be paid directly to the attorney, who may enforce the order in the attorney's name.

 The trial court is afforded considerable discretion in determining whether to award attorney's fees. *McMullin v. McMullin*, 926 S.W.2d 108, 113 (Mo.App. 1996). The court " 'is considered an expert on the necessity, reasonableness and value of fees.' " *Taylor*, 25 S.W.3d at 648 (quoting *Thomas v. Thomas*, 989 S.W.2d 629, 636 (Mo.App.1999)). Relevant factors for the trial court to consider in determining whether to award attorney's fees include the financial resources of the parties, their conduct during the marriage, and "any unreasonable conduct of a spouse during the dissolution proceeding that may have increased the other spouse's attorney's fees." *Id. Bauer v. Bauer*, 38 S.W.3d 449, 457 (Mo.App.2001).

In its judgment, the court detailed why it found that Husband's conduct warranted his paying Wife's attorney's and experts' fees:

### ATTORNEY'S FEES/LEGAL EXPENSES

17. The Court finds that [Husband] should pay taxable court costs and, addi-tionally: David Nunn's appraisal bill of $1,100.00; Ann Nunn's appraisal bill of $975; Dale Siebeneck's accounting analysis bill of $4,512.00; Dewayne Haslag's appraisal bill of $45.00 and his bill for courtroom testimony of $112.00; Gary Siefert's [sic] bill of $225.00; and attorney's fees and expenses, in addition to those stated above, of $54,334.51. Judgment for the attorney's fees and expenses will be entered directly in favor of [Wife's attorney] and is made a lien against all real estate set aside to [Husband] either as marital or separate. This Court specifically finds that [Husband] should pay these fees and expenses because of his conduct in this litigation. As of January 22, 2001, he was in arrears $1,332.00 in temporary maintenance, and [Wife] had incurred attorney's fees to prosecute a motion for contempt for that maintenance which was noticed for a hearing on January 22, 2001. This Court previously has issued a show cause order on June 29, 2000, one on June 16, 2000, one with a return date of June 5, 2000, one on December 23, 1999, and one on November 16, 1999. On July 19, 2000, this Court found [Husband] in contempt for failing to comply with its orders relating to abusing [Wife]. This Court finds that with a view towards collecting her temporary maintenance, [Wife] ran a writ of garnishment against the Nienheuers [sic] but that [Husband] took action such that they did not honor this writ at a time when [Husband] was not paying his temporary maintenance. The Court finds that [Wife] has repeatedly had to resort to contempt proceedings in order to collect temporary maintenance and in order to protect her peace. The Court finds, as above-stated, that [Husband] has failed to comply with Court rules or

orders with respect to discovery and that [Wife] has had to resort to judicial action in order to obtain discovery. In light of these fact [sic], the Court finds that [Husband] should pay legal fees and expenses as stated above. The Court finds that Judgment in the amount of $54,334.51 for the attorney's fees and expenses should be entered in favor both of [Wife] and [Wife's attorney], and that same should not be dischargeable in bankruptcy because these fees were caused by [Husband]'s intentional misconduct.

First, Husband argues that the award is erroneous because a substantial portion of Wife's attorney's fees and experts' fees were incurred after the case was initially tried in the fall of 2000. The case was still pending in the trial court between the October 6, 2000 and January 22, 2001 trial dates, however. Moreover, section 452.355.1 permits the trial court to award attorney's fees and costs incurred even after the entry of a final judgment. That Wife incurred a substantial portion of attorney's fees and experts' fees after evidence was initially heard does not prohibit the court from ordering Husband to pay those fees.

Next, Husband claims that the evidence was insufficient to support the attorney's fees award of $54,334.51. Husband notes that at trial, Wife introduced exhibits detailing the work Wife's law firm completed on her case and indicating Wife's total attorney's fees to be $28,189.66. After trial, on January 31, 2001, Wife's counsel sent a letter to the court, copied to Husband's counsel, that stated, "Attached is a breakdown of my legal fees and expenses incurred in this matter as of January 26, 2001." The attached sheet indicated legal fees in the amount of $51,237.00, and expenses in the amount of $3,097.51, for a total of $54,334.51.

The trial court, as an expert on the issue of attorney's fees, can set the amount of an attorney's fees award " ' "without the aid of evidence." ' " *Nelson v. Hotchkiss*, 601 S.W.2d 14, 21 (Mo. banc 1980) (citations omitted). The setting of attorneys' fees "is in the sound discretion of the trial court and should not be reversed unless the amount awarded is arbitrarily arrived at or is so unreasonable as to indicate indifference and a lack of proper judicial consideration." *Id.* As the party challenging the attorney's fees award, Husband has the burden of establishing that the award is "a clear or manifest abuse of sound judicial discretion." *Id.*

That the award is the exact amount of attorney's fees that Wife's counsel asserted in his post-trial correspondence to the court shows that the attorney's fees award in this case was not based upon the court's exercise of its judicial discretion, but, rather, was based upon this correspondence. This letter, although filed with the court, was not in evidence, as "[t]he mere filing of a document does not put it into evidence." *In re Morrison*, 987 S.W.2d 475, 479 (Mo.App.1999). Counsel's filing of a fee statement after the close of evidence does not provide a proper evidentiary basis for a judgment. *Id.* This court finds that the award of $54,334.51 in attorney's fees is a clear abuse of sound judicial discretion. The attorney's fees award is, therefore, reversed.

Finally, Husband claims that the attorney's fees and experts' fees award is erroneous because Wife had already paid a portion of these fees out of marital funds she withdrew during the parties' separation, and the court declined to attribute the withdrawn marital funds to her. At trial, Wife offered an exhibit detailing how she spent the $30,020.75 in marital funds

she withdrew during the parties' separation. Listed on this exhibit were checks to "Gary Seifert Appraisal" for $225.00 and "Ann Nunn Appraisals" for $975.00, and checks to her attorney totaling $13,274.20.[11] Husband argues that by not attributing to Wife the income she withdrew during the parties' separation to pay these fees, and by ordering Husband to pay these particular fees in the judgment, he is, in effect, paying them twice.

■ Husband mischaracterizes the court's action. By ordering Husband to pay all of Wife's attorney's fees, including that which Wife had already paid from the marital funds she had withdrawn, the court was ordering Husband to reimburse Wife for her portion of marital funds she expended in maintaining the dissolution action. The net effect of the court's action was to award Wife a greater share of the marital property. It is clear from the judgment that the court in this case intended to effectuate a disproportionate division of the marital property in favor of Wife, which it was permitted to do under the circumstances. *See Nelson v. Nelson*, 25 S.W.3d 511, 517–18 (Mo.App.2000). The court did not err in ordering Husband to pay Wife for the attorney's fees she had already paid out of marital funds.

■ As for Mr. Seifert's and Ms. Nunn's appraisal fees, Husband further argues that the court erred in ordering him to pay these because the actual bills were not received into evidence. At the close of the January 22, 2001 trial date, Wife's attorney stated that Mr. Seifert's and Ms. Nunn's bills had never been presented to the court. When he attempted to offer these bills into evidence, Husband's attorney objected, and the court sustained the objection.

Husband is correct that Mr. Seifert's and Ms. Nunn's bills were not before the court. Thus, the court's award to Wife for the amounts of those bills was not based upon substantial and competent evidence in the record. The portion of the judgment ordering Husband to pay $54,334.51 in attorney's fees, $225.00 for Mr. Seifert's appraisal bill, and $975.00 for Ms. Nunn's appraisal bill is reversed.[12] Husband's fourth point is granted, in part, and denied, in part.

## V. Conclusion

On Wife's appeal, this court finds that the trial court erred in identifying Husband's interest in Kauffman Brothers, LLC and Kauffman Enterprises as Husband's separate property. The trial court also erred in identifying any claim Husband may have against his brother, Kenneth, for $25,000.00 as Husband's separate property. The court erred in valuing the Martin note at only $2,000.00, as the evidence showed that the note was worth $9,000.00. Finally, the court erred in finding that Firstar Account # 377000895 is only one-half marital, as there was no evidence to support such a finding. The trial court's judgment on these issues is re-

---

11. Wife also testified that she paid another $10,000.00 to her attorney right before trial, but the $10,000.00 did not come from the $30,020.75 in marital funds that she had withdrawn.

12. In the argument portion following this point, Husband also disputes the propriety of ordering him to pay two particular appraisal bills, namely, Dewayne Haslag's appraisal bill of $45.00 and his bill for courtroom testimony of $112.00, and David Nunn's appraisal bill of $1,100.00. The arguments Husband makes concerning these particular bills, however, were not raised in his point relied on. Therefore, they are not preserved for appeal, and this court declines to address them. *City of Riverside v. Progressive Inv. Club of Kansas City, Inc.*, 45 S.W.3d 905, 913 n. 1 (Mo.App. 2001).

versed, and the cause is remanded for the trial court to correct its identification and valuation of these assets and divide them accordingly. If the court finds it necessary to reconsider its overall property division, the court may do so.

On Husband's appeal, this court finds that the award of $54,334.51 in attorney's fees was a clear abuse of discretion, and the awards of $225.00 for Gary Seifert's appraisal and $975.00 for Ann Nunn's appraisal are not supported by competent and substantial evidence in the record and are reversed. Because this court is re-

manding the case on other issues, the trial court may hear additional evidence on the issue of attorney's fees and expenses of litigation as the court deems necessary. The judgment of the trial court is affirmed on all other issues raised.

All concur.